**In re William Joseph BORROR, Debtor.**

**SIGNET BANK/VIRGINIA, Plaintiff,**

**v.**

**William Joseph BORROR, Defendant.**

**Bankruptcy No. 90–9272–9P7.
Adv. No. 90–719.**

United States Bankruptcy Court,
M.D. Florida,
Fort Myers Division.

Sept. 23, 1991.

Andrew S. Forman, Tampa, Fla., for plaintiff.

Herbert A. Fried, Fort Myers, Fla., for defendant.

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 7 liquidation case and the matter under consideration is a Complaint by Signet Bank/Virginia (Signet) seeking a determination that the debt due and owing by William Joseph Borror (Debtor) to Signet is nondischargeable pursuant to § 523(a)(2)(A) and § 523(a)(2)(B) of the Bankruptcy Code. The facts relevant to the matter under consideration, as they appeared at the final evidentiary hearing, are as follows.

The Debtor is a former resident of Virginia and a former United States Post Office employee, who at one time earned $700.00 every two weeks. In June, 1989, the Debtor moved to Florida and obtained a Florida driver's license and Florida license tags for his car. He attempted to transfer his employment status with the Post Office to Florida, and he completed the necessary paperwork to do so. However, the Debtor was unsuccessful in obtaining a transfer, and in November, 1989, he took a temporary job as a mill worker. He was always hopeful that he would again work for the Post Office. From November 8 through November 16, 1989, the Debtor worked for forty hours as a laborer for Quality Mill Work at the rate of $6.50 per hour. He stopped working there because of injuries sustained on the job, and he has not been gainfully employed since that time. The Debtor receives workers' compensation in the amount of $346.00 biweekly.

In late October or early November of 1989, the Debtor received an unsolicited credit card application from Signet for a line of credit of up to $5,000.00. The Debtor completed the application on November 11, 1989, and stated on the application that he worked as a wood craftsman for four years and nine months and that his gross monthly income was $1,536.00. (Signet Exh. # 1). However, on the Debtor's Schedules and Statement of Affairs, he reported income in 1989 in the amount of $9,000.00. His 1988 reported income was $25,000.00. (Signet Exh. # 3). The Debtor, a Vietnam Veteran who has been diagnosed as suffering from depression and anxiety, testified that he was taking medication for depression, nerves, and sleeping problems when he completed the credit card application with Signet. However, there was no evidence to substantiate either the fact that he was taking the medication or the effects of the medication.

A Signet representative in charge of the Bankruptcy Department detailed the factors Signet looks for in extending credit to an application. These factors include:

—A stable employment history with a least one year on the job.

—Yearly income of at least $15,000.00.

—An acceptable income-to-debt ratio.

After reviewing the Debtor's credit card application, Signet issued a credit card to the Debtor with a credit limit of $2,000.00.

Within a three-week period, beginning in April, 1990, the Debtor took cash advances totalling $1,100.00 on the Signet card. Thereafter, he used the card to make a few minor purchases, and he made payments on his account of less than $200.00. In August, 1990, the Debtor took $360.00 in cash advances, and when he filed his Petition for Relief under Chapter 7 of the Bankruptcy Code, he had an outstanding debt on the Signet card in the amount of $2,143.00.

These are the facts upon which Signet bases its claim of nondischargeability pursuant to § 523(a)(2)(A) and § 523(a)(2)(B) of the Bankruptcy Code. These Sections provide as follows:

§ 523. Exceptions to discharge.

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual from any debt—

(2) for money, property, services, or an extension, renewal, or financing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

(B) use of a statement in writing—
(i) that is materially false;
(ii) respecting the debtor's or an insider's financial condition;
(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
(iv) that the debtor caused to be made or published with intent to deceive;
. . .

■ The purchase of goods with a credit card constitutes an implied representation by the purchaser that he has both the means and the intent to pay for the goods. *In re Schmidt*, 36 B.R. 459 (E.D.Mo.1983). Thus, if the cardholder uses the card to purchase goods or obtain cash advances while knowing the charges cannot be paid, or if evidence indicates that the cardholder should have known the charges could not be paid, the creditor has established a claim of nondischargeability. *In re Carpenter*, 53 B.R. 724 (Bankr.N.D.Ga.1985). The recent Supreme Court decision of *Grogan v. Garner*, —— U.S. ——, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991), provides that the creditor has the burden of proving a claim of nondischargeability by a preponderance of the evidence rather than by clear and convincing evidence.

■ Based on Signet's criteria in extending credit, Signet would not have extended credit to the Debtor if it knew that he earned $6.40 per hour, or $13,312.00 per year, or if it knew that the Debtor was on his present job for three days when he completed his application. Signet relied on the Debtor's statement on his application that he earned $1,560.00 per month, or $18,720.00 per year, and that he was at his present job for nearly 5 years.

■ This Court cannot determine, based on the Debtor's unsubstantiated testimony, that the medication he was taking prevented him from forming the requisite intent to deceive Signet when he completed the Signet application. Although the Debtor testified that he thought he was still living in Virginia and working at the Post Office when he completed the application, this Court notes that he drove from Virginia to Florida, obtained a Florida driver's license, obtained Florida tags for his car, and stated on his application that he was employed as a wood craftsman. The Court is persuaded that based on the totality of the evidence, Signet has met its burden of proving by a preponderance of the evidence all of the elements of § 523(a)(2)(B), including the element of intent, and thus, the Debtor's debt to Signet in the amount of $2,143.16 should be declared nondischargeable pursuant to § 523(a)(2)(B) of the Bankruptcy Code.

This Court is not unmindful of the case of *First National Bank of Mobile v. Roddenberry*, 701 F.2d 927 (11th Cir.1983) where the Court held that a claim of nondischargeability cannot be sustained under § 523(a)(2)(A) simply because the cardholder exceeded the authorized credit limit.

The *Roddenberry* Court held that the card issuer assumes the risk that a cardholder may exceed the credit limit, and only charges incurred after the privilege to use the card was revoked by the issuer of the card and the revocation of the privilege was, in fact, effectively communicated to the cardholder, any charges made thereafter would be nondischargeable. However, *Roddenberry* is not controlling in this case. First, because in this instance the Debtor obtained the credit card from Signet by submitting a materially false application for the credit card on which Signet justifiably relied. Moreover, this record leaves no doubt that when this Debtor incurred charges by using the card issued by Signet, he knew or he certainly should have known that he would not be able to meet the charges and therefore, he certainly obtained property by actual fraud. Thus, the debt represented by these charges would be clearly within the accepted provisions to discharge by virtue of § 523(a)(2)(A) of the Bankruptcy Code, notwithstanding *Roddenberry*. A separate Final Judgment will be entered in accordance with the foregoing.

DONE AND ORDERED.