In re Charles E. **DAVIS**, Debtor.

**SEARS, ROEBUCK AND COMPANY, Plaintiff,**

v.

**Charles E. DAVIS, Defendant.**

**Bankruptcy No. 91–970–8P7.
Adv. No. 91–351.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Dec. 10, 1991.

Vincent A. Leto, Tampa, Fla., for plaintiff.

Richard V. Ellis, Sarasota, Fla., for defendant.

FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 7 liquidation case and the matter under consideration is the dischargeability, *vel non,* of a debt owed by Charles E. Davis (Debtor) to the Plaintiff, Sears, Roebuck and Company (Sears) in the amount of $4,604.25. This case may be aptly characterized as the case of a debtor with "lotto mania," and the facts established at the final evidentiary hearing rele-

vant to the resolution of this matter are as follows.

The Debtor is a divorced person, employed by the Sarasota School Board. At the time relevant, he had disposable income of $1,100.00 per month. The monthly expenses of the Debtor total $1,050.00 and consist of the following:

| | |
|---|---|
| Rent (1 room apt.) | $ 250.00 |
| Car Payment | 125.00 |
| Car Insurance | 30.00 |
| Gas and Oil | 40.00 |
| Child Support | 405.00 |
| Food | 200.00 |
| | |
| Total | $1,050.00 |

Sometime in early 1990, the Debtor opened two accounts with Sears, a Sears Revolving Charge Account (credit card) and Sears Charge Plus Account (Charge Plus), which was to be used for major purchase in excess of $1,000.00. (Plaintiff's Exh. # 1). Between April 2 and April 7, 1990 the Debtor purchased on Charge Plus a washing machine and dryer for $993.90; a refrigerator for $1,604.87 and a freezer for $667.68, for a total of $3,266.45. According to the Debtor, he purchased the washing machine and the dryer because he was "enticed" and seduced by a Sears promotion which offered major appliance items for sale with the proviso that no payments would be required for four months. It is utterly puzzling and unexplained why on earth the Debtor purchased these large appliances when he lived in a one-room apartment.

During approximately the same time period, the Debtor also purchased on credit a bushwacker, VCR, wheelbarrow, cologne, bracelets, a gold chain, necklaces, earrings and various other items (Plaintiff's Exh. No. 3). The Debtor explained that some of the appliances and other items were given away, some to his ex-wife as a gift, some to several girlfriends, and some were sold by the Debtor. According to the Debtor, he sold some items to generate funds to make a concerted effort to "hit the big one" on the Lotto by spending more than $15,000.00 on lottery tickets or, as a back-up, to "break the bank" in Las Vegas by spending more than $20,000.00. The Debtor then planned on using his gambling winnings to pay off his creditors, including Sears.

It is without dispute that the Debtor made minimum payments on the credit card account up to and including August 1990, but paid nothing thereafter. It further appears that the Debtor never made any payments on the Charge Plus account. At the time the Debtor embarked on his buying spree with Sears, he already had an outstanding balance of $930.36 on his Sears credit card, and he was already indebted on various and sundry accounts in the total amount of approximately $26,165.00. In May, 1990, the Debtor increased his spending habits and charged over $40,113.00 on jewelry and other items on 18 new charge accounts. Of course, these facts demonstrate without a shadow of doubt and point to this Debtor's reckless use of credit.

These are the salient facts by which Sears seeks a determination by this Court that the debt in the amount of $4,604.25 should be declared nondischargeable by virtue of § 523(a)(2)(A) of the Bankruptcy Code. This Section provides as follows:

§ 523. Exceptions to Discharge.

(a) A discharge under section 727, 1141, 1228(a), 1228(b) of this title does not discharge an individual debtor from any debt—

.    .    .    .    .

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

It is well established, of course, that the burden of proof is on the Plaintiff. It no longer can be said that the standard of proof is clear and convincing evidence as established by the Eleventh Circuit in the case of *Chrysler Credit Corp. v. Rebhan*, 842 F.2d 1257 (11th Cir.1988). Instead, it is merely a preponderance of the evidence as established by the Supreme Court in *Grogan v. Garner*, 498 U.S. ——, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

■ Counsel for the Debtor urges in this claim of nondischargeability that, inasmuch as there is no evidence that Sears ever effectively revoked the Debtor's privilege to use the card, the claim of nondischargeability cannot be sustained pursuant to *First National Bank of Mobile v. Rodenberry*, 701 F.2d 927 (11th Cir.1983). According to the Debtor, under *Rodenberry*, a credit card debt may be nondischargeable *only* when a debtor continues to use a credit card after the privilege to use the card has been effectively revoked and that revocation has been communicated to the cardholder. The Debtor is correct that in *Rodenberry*, the Eleventh Circuit was unwilling to adopt the so-called "implied representation" theory stemming from the mere use of a credit card. Under this approach, the Debtor makes an implied representation that he has the ability and intention to pay for the charges incurred. However, according a loose reading of *Rodenberry* as urged by the Debtor would condone and sanction irresponsible buying sprees by consumer debtors, which was clearly never intended to be part of the overall rehabilitative concept Congress intended when it enacted the Bankruptcy Code. *Lines v. Frederick*, 400 U.S. 18, 91 S.Ct. 113, 27 L.Ed.2d 124 (1970).

This Court agrees with the proposition that merely exceeding a credit limit or the mere excessive use of a credit card is insufficient, *per se*, to form the basis for a claim of nondischargeability under § 523(a)(2)(A). However, a fraudulent use of a credit card is another matter. Thus, if evidence shows that at the time the Debtor incurred the charges, he was unable to live up to the obligations and pay the charges because of then-existing financial conditions or if it is reasonable to infer from the record that the Debtor had no intention to pay the charges incurred, actual fraud would exist. Under such circumstances, not even *Rodenberry* would render the debt dischargeable under § 523(a)(2)(A). *See In re Banasiak*, 8 B.R. 171 (Bankr.M.D.Fla.1981).

■ The Debtor's spending spree at Sears, which occurred during a five or six day period in April, 1990, probably would not make the *Guinness Book of World Records*, a feat no doubt achieved by Miss Dixie Lee Dorsey. *In re Dorsey*, 120 B.R. 592 (Bankr.M.D.Fla.1990). Nevertheless, this situation would make a good run for honorable mention if one takes into account not only the amount of purchases between April 2 to April 8, 1990 but also the charging conduct of this Debtor in May, 1990, which were discussed previously. The Debtor's conduct in April and May, 1990 clearly indicates that the Debtor's only help for this chaotic financial condition would have been the coming to fruition of his hope to "hit the big one" in Lotto or "break the bank" in Las Vegas, both highly speculative propositions acceptable only if one lives in a dream world.

In the present case, the disposable income of this Debtor at the time relevant was $1,100.00 and his fixed monthly expenses were $1,050.00 leaving him $50.00 available to meet his outstanding obligations which were in excess of $26,000.00. Certainly the Debtor's monthly free cash of $50.00 would be somewhat shy to meet the interest, let alone the principal obligations incurred by the Debtor for the credit purchases described. One need not be a mathematical wizard to realize that this Debtor's situation presents a picture classically referred to with the adage "There is no way to squeeze blood out of a turnip." In sum, this Court is satisfied that before this Debtor embarked on this spending spree in April, 1990 he was fully aware and cognizant of his financial situation and knew that he would not be able to meet these obligations unless, as he stated, he "hit the big one" in Lotto or "broke the bank" in Las Vegas. This Court is constrained to reject these fantasies as an unreasonable explanation for the Debtor's charging habits. For this reason this Court is satisfied that the debt incurred by this Debtor in the amount of $4,604.25 shall be excepted from the overall protected provisions of the bankruptcy discharge by virtue of § 523(a)(2)(A) of the Bankruptcy Code. A separate Final Judgment will be entered in accordance with the foregoing.

DONE AND ORDERED.