**In re Laura C. VERMILLION, Debtor.**

**HOUSEHOLD CARD SERVICES/VISA, Plaintiff,**

v.

**Laura C. VERMILLION, Defendant.**

Bankruptcy No. 91–40493–2.
Adv. No. 91–4125–2.

United States Bankruptcy Court,
W.D. Missouri.

Jan. 17, 1992.

Randall W. Cain, Lee's Summit, Mo., for debtor/defendant.

Mark J. Schultz, Kansas City, Mo., for plaintiff.

## MEMORANDUM OPINION

FRANK W. KOGER, Chief Judge.

This proceeding arose by Complaint in which the plaintiff, Household Card Services d/b/a Visa (hereinafter "Household"), seeks a determination that the debtor's outstanding indebtedness to it arising by reason of credit card charges is nondischargeable pursuant to § 523(a)(2)(A) of the Bankruptcy Code. Jurisdiction is based on 28 U.S.C. § 1334(b). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). For the reasons set forth below, the debtor's obligation to Household is NONDISCHARGEABLE.

## BACKGROUND

In October 1990, Household sent an unsolicited credit card application to the debtor with a pre-approved credit line of $4,000.00. At the time debtor accepted this

credit card, the debtor and her husband had already amassed $29,000.00 in credit card debt. The debtor's family had monthly income of $1,128.00 while their fixed monthly expenses were $1,408.00. Debtor's husband was a full time student and had been virtually unemployed for a year. He had been looking for employment but was not employed until May, 1991.

The first use of the credit card came on November 6, 1990, which involved a cash advance of $2,200.00 which was used to pay two house payments and other past due bills. The next cash advance of $213.00 was used for gambling purposes at the local dog track. The card was used only for cash advances which soon exceeded the $4,000.00 limit. No payments were ever made toward these cash advances. The debtor is financially sophisticated in that she is employed by a bank as a personal banker and thus, understands how the credit world operates.

## DISCUSSION

The debtor claims that Household's case should be set aside for failure to plead the elements of fraud, mainly that of reliance, with particularity as required by Bankruptcy Rule 7009. The evidence adduced at trial without objection adds to the complaint of the necessary particularity required and in light of Bankruptcy Rule 7008 (that all pleadings are to be construed as to do substantial justice). Household's complaint is sufficient. Debtor further raises as a defense that Household is bound by the testimony of the debtor, who was the only witness called by Household and was, of course, a hostile witness. It is true that Household is bound by the testimony of its hostile witness, but only to the extent that it is uncontradicted or is the only evidence on the matter. See *Taylor v. Riddle*, 384 S.W.2d 569, 574 (Mo.1964). Since the hostile witness's testimony was contradicted by other evidence Household is not bound by the testimony of the debtor at trial.

The issue addressed by this case is whether the use of a credit card by the debtor implies a representation that the debtor has both the intent and ability to repay the debt. A majority of the courts have adopted what is known as the "implied representation doctrine" which states that a debtor does make a representation of intent and ability to pay. However, few of these courts have offered the rationale and purpose behind such holding and, therefore, a review of the doctrine is warranted. The bankruptcy courts in this district have previously held that for dischargeability purposes a consumer using a credit card is held to imply a willingness and an ability to pay for purchases. *In re Bartlett*, 128 B.R. 775 (Bkrtcy.W.D.Mo. 1991) and *In re Pittman*, 41 B.R. 382 (Bkrtcy.W.D.Mo.1984). The *Roddenberry* "Revocation Rule" *First National Bank of Mobile v. Roddenberry*, 701 F.2d 927 (11th Cir.1983), and cases following that line of reasoning have been implicitly rejected in this district and are not in issue. The question is whether a debtor implies both intent and ability to pay or whether a debtor only implies an intent to repay.

What is implied when using a credit card is implied in law and not implied in fact and this is done because the business transaction is not done face to face, but rather through conduit, the store owner or cash advancer. In fashioning the implied representation doctrine the courts look to what kind of representations are normally required before credit is extended between persons dealing one on one with each other. In such cases the creditor wants assurances that the debtor intends to repay the debt and also that he has the ability to pay the debt. The ability to repay the debt may be determined by the creditor or the creditor may simply rely upon debtor's representations of his ability, but in either case the creditor desires reassurances that the debtor can repay the debt. Since in the credit card system the debtor deals directly with a third party, the representations which would normally be made to the said party are passed through to the credit card company. The debtor, by using the credit card, forces the credit card company to guarantee payment. Therefore, the issuer should be able to step into the shoes of the supplier of goods, services or money and receive the same representations that said supplier would normally receive.

Some courts reject the implied representation of ability to pay and instead say that the debtor only makes an implied representation of his intent to repay. *In re Carpenter*, 53 B.R. 724 (Bkrtcy.1985); see also *In re Blackburn*, 68 B.R. 870 (Bkrtcy. N.D.Ind.1987); *In re Faulk*, 69 B.R. 743 (Bkrtcy.N.D.Ind.1986). The main fear of courts ruling this way seems to be that by allowing an implied representation of ability to pay, we are actually relying upon "implied fraud". Implied fraud is, of course, not permitted under § 523(a)(2)(A) nor should it be. Implying a representation of ability to pay is not implied fraud because intent to deceive must still be shown. *In re Schmidt*, 36 B.R. 459 (D.C.Mo.1983). If the debtor did not have the ability to repay and represents that he does have the ability to pay, this is actual fraud, not implied fraud. This is the point seemingly ignored by some courts. It does not matter that the debtor would repay the debt if he had the resources to pay. What counts is whether the debtor made the representations of his ability to pay, without reasonable belief that he could repay, in order to deceive the creditor, and thereby inducing the extension of credit. The debtors' intent to repay is inconsequential in light of his intent to deceive or at a minimum his reckless disregard for his financial circumstances. This was the point made in *In re Preece*, 125 B.R. 474 (Bkrtcy. W.D.Tx.1991) where the court held that the debtor had the intent to repay the debt, but not the good faith belief in his ability to repay the debt.

Policy considerations also dictate that both representations may be implied. Where only intent to repay is implied, the card company is at extreme disadvantage. This debtor's own testimony that she intended to repay the debt is practically impossible for the card company to disprove, since under that standard the total insolvency of the debtor at the time is irrelevant. A case illustrating the absurdity of this reasoning is *In re Landen*, 95 B.R. 826, (Bkrtcy M.D.Fla.1989) where the court held that although the debtor had lied about his job, exceeded his $500.00 credit limit by $4,796.86, consulted with an attorney before starting his spending spree, and was insolvent at the time the charges were made, he had the intent to repay the debt in that he believed that he would win the money gambling. An implied representation of intent to repay leaves too much discretion to the ad hoc rulings of court and severely impairs the creditor's rights to make a case even under bizarre facts. If the implied representation of ability to repay is used however, then at least one objective criteria is applied; did the debtor have the ability to repay? If he did not have the ability to pay or reasonable expectation of ability to repay in the future, then you must look to whether he made the representation with the intent to deceive. The question is now more focused because if he did not have the ability to pay, the only question is did he know that he did not have the ability to pay? If the court finds that debtor knew he was unable to repay or incurred the debt with reckless disregard as to reasonable belief that he could pay, then fraud has been proven.

## CONCLUSION

This debtor incurred the debt to Household at a time when she was already insolvent. This debtor used the card only for cash advances and used that money to pay off other debts or to gamble. This debtor made no payments on the debt and incurred the last charges only two weeks prior to filing bankruptcy. The Court finds that at the time when the charges were made, the debtor did not have the ability to repay the debt. The Court further finds that the debtor knew she did not have the ability to repay the debt and thus, she intended to deceive Household. Therefore, the Court concludes that the amount of debt owed to Household is NONDISCHARGEABLE under § 523(a)(2)(A).

The foregoing Memorandum Opinion constitutes Findings of Fact and Conclusions of Law as required under Rule 7052, Rules of Bankruptcy.

SO ORDERED.