In re Raymond LARSON and Yvonne J. Larson, Debtors.

NORWEST BANK IOWA, N.A., Plaintiff,

v.

Raymond L. LARSON and Yvonne Larson, Defendants.

Bankruptcy No. 90–05863.

Adv. No. 91–7064.

United States Bankruptcy Court, D. North Dakota.

Jan. 27, 1992.

**542**

Gary E. Cameron, U.S. Trustee.

Sheldon A. Smith, Bismarck, N.D., for defendant, R.L. Larson.

Elizabeth Neufeld Smith, Bismarck, N.D., for plaintiff.

## MEMORANDUM AND ORDER

WILLIAM A. HILL, Bankruptcy Judge.

This adversary proceeding arose by complaint filed August 15, 1991, by which the plaintiff, Norwest Bank Iowa, N.A. (Bank), seeks a determination that the Debtors' outstanding indebtedness owing to it arising by reason of Mastercard charges is nondischargeable pursuant to sections 523(a)(2)(A) and 523(a)(3). The Bank also asserts that because the bank card obligations were not timely included in the Debtors' schedules that the Debtors be generally denied a discharge under section 727(a)(2), (a)(3), (a)(4)(A) and (a)(5). Preparatory to trial held before the undersigned on December 19, 1991, the Bank stipulated to the dismissal of Yvonne J. Larson as a party defendant. At the conclusion of the evidence the court granted a directed verdict dismissing the Bank's cause of action under section 523(a)(3), section 727(a)(2) and section 727(a)(3). Remaining to be resolved is whether the Bank has established a basis for relief under section 523(a)(2)(A) and/or section 727(a)(4). The following constitutes the facts material to these issues.

### Findings of Fact

The remaining defendant, Raymond L. Larson (Larson), and his wife Yvonne J. Larson filed a joint petition for relief under Chapter 11 on October 16, 1990. In schedule A–3 filed on November 20, 1990, the Bank is not listed as a creditor. The case was subsequently converted to a Chapter 7 on July 22, 1991, and in Chapter 7 schedules filed in October 1991, the Mastercard indebtedness is listed.

For a number of years preceding bankruptcy, Larson and his wife held three Mastercard bank cards. Account numbers 6317 0016 8890 0023 and 5317 0016 8890 0031 (collectively referred to as account number 023/031) were issued in Larson's name only and were used primarily for business-related expenses. Account number 5317 0063 0090 5451 (referred to as account number 5451) was issued jointly to Larson and his wife and was used both for business as well as personal and family expenses. Larson continued to use these cards, after his Chapter 11 filing, making charges as well as payments, until the Bank closed the accounts after it learned of the bankruptcy filing.

Within the 40–day period preceding the Chapter 11 filing, the Debtors charged $977.71 on account number 5451 and $5,877.65 on account number 023/031. A close review of the monthly statements suggest that the charges on account number 023/031 were business related. The statements issued for account number 5451 as well as 023/031 do not show charges made for any obvious "luxury goods or services". All appear to be either business related or for such mundane things as gasoline, family-type restaurants, and mid-range motels.

Total charges made against account 023/031 after the Chapter 11 filing total $3,107.82 with the last charge being made on December 18, 1990. Charges on account number 5451 continued post-petition until May 13, 1991, with total post-petition charges being made of $4,567.44. Although Larson continued to use the cards, he continued to make regular monthly payments against account number 5451 and from November 1990 through May 13, 1991, he paid $18,602.00 against the outstanding account balance. No post-petition payments were made against account 023/031 and December 1990 it was seriously

delinquent. The January 1991 billing statement declared the entire balance due and asked for card surrender.

The Bank was unaware of the Debtors' bankruptcy filing until May 10, 1991, when one of its collection officers made telephonic contact with Larson regarding the extreme delinquency in account 023/031. It was during this conversation that Larson advised he had filed bankruptcy. The first written notice was not received until the Bank, finally listed on the Chapter 7 schedules, received a copy of the amended schedule E. According to the testifying bank officer, had the bank been aware of the Chapter 11 filing in 1990, the accounts would have been closed at that time and no further credit would have been extended.

Although acknowledging the indebtedness owing to the Bank and his failure to list accrued Mastercard charges on his original Chapter 11 schedules, Larson testified at trial that the turmoil surrounding the Chapter 11 filing perhaps caused him to be less careful than he should have been and that he merely overlooked these particular debts. Further, he said he did not intend on the bank being omitted from the schedules but rather intended to continue using the cards through the Chapter 11 reorganization process just as he always had.

The Chapter 11 statement of affairs and schedules reveal this to be a fairly large and complex case. Larson listed interests in eight separate business entities. Total assets were listed at $4,758,000.00 and total liabilities at $5,212,000.00, including priority debt of $338,000.00, secured claims of $4,788,000.00 and unsecured claims of $183,000.00. On the heels of the Chapter 11 filing Larson was barraged with Rule 2004 exams, multiple relief from stay motions and adversary proceedings. To say there was turmoil is an understatement.

As of July 1, 1991, there is an outstanding balance of $5,545.15 on account number 5451 and as of June 24, 1991, there is outstanding on account number 023/031 a balance in the amount of $8,985.47. Both accounts accrue interest at the rate of 19.8% per annum.

*Conclusions of Law*

1.

Section 523(a)(2)(A) provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt— ...

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

.     .     .     .     .

11 U.S.C. § 523(a)(2)(A).

To establish a basis for nondischargeability under the foregoing section the creditor must establish each of the following five elements by a fair preponderance of the evidence:

(1) that the debtor made representations;

(2) that at the time the representations were made he knew them to be false;

(3) that the representations were made with the intention and purpose of deceiving the creditor;

(4) that the creditor relied on the misrepresentation;

(5) that the creditor sustained the alleged injury as an approximate result of the representations having been made.

*In re Ophaug*, 827 F.2d 340, 342 n. 1 (8th Cir.1987). Presumption of nondischargeability arises for consumer debts owing to a single creditor aggregating more than $500.00 for luxury goods or services incurred within 40 days of the bankruptcy filing. 11 U.S.C. § 523(a)(2)(C). This presumption fails under the evidence presented in this case because none of the prepetition charges appear on their face to be for obvious luxury items. Rather, as noted in the findings of fact, the charges appear for the most part to be business related or for mundane family necessities.

Third party transactions involving the use of bank cards are not typical fraud cases due to the difficulty if not impossibili-

ty of applying the five enumerated elements to situations where a card holder, in making use of a bank card, presents it not to the bank issuer seeking section 523 relief but instead to a retail merchant who accepts the card in faith that the issuing bank will pay him. Recognizing this relationship courts have implied the element of representation from the mere use of a bank card. The use of a bank card is an implied representation to the issuer that the holder has both the intent and ability to pay the issuer for the charged purchases and advances. *In re Hinman*, 120 B.R. 1018 (Bankr.D.N.D.1990). The fact that Larson used the three cards establishes the first element.

■ Proof that a credit card debtor knew the representations to be false and made them with the intent and purpose of deceiving the card issuer are more difficult to prove because as with all fraud cases rarely, if ever, will a debtor admit such was his intent. These elements may, however, be inferred from objective factors suggesting that a debtor knew or should have known at the time of card use that he was insolvent and lacked the ability to repay. *In re Hinman, supra; In re Pedrazzini*, 644 F.2d 756 (9th Cir.1981). The following nonexclusive list are factors from which a court may infer the requisite intent in cases of credit card fraud:

1. The length of time between the charges made and the filing of the bankruptcy;

2. Whether or not an attorney has been consulted concerning the filing of bankruptcy before the charges were made;

3. Number of charges made;

4. The amount of charges;

5. The financial condition of the debtor at the time the charges were made;

6. Whether the charges were above the credit limit of the account;

7. Whether the debtor made multiple charges on the same day;

8. Whether or not the debtor was employed;

9. The debtor's prospects for employment;

10. Financial sophistication of the debtor;

11. Whether there is a sudden change in the debtor's buying habits;

12. Whether the purchases were made for luxuries or necessities.

*In re Hinman, supra.*

Applying these factors to the instant case is an imprecise indicator of intent because, as contrasted to the typical Chapter 7, Larson was a business entrepreneur with considerable financial resources available to him at the time he filed Chapter 11. As with any Chapter 11, his intent was not to liquidate his holdings but rather to attempt a reorganization and continuation of his business enterprises. Thus, the fact that he continued to use the cards is not in and of itself indicative of an intent to defraud. Moreover, a review of the monthly statements themselves suggest that the charges made subsequent to the Chapter 11 filing were not unusual but continued in the same pre-bankruptcy pattern. The fact that from November 1990 through May 13, 1991, a period of seven months, Larson made seventeen substantial payments against account 5451 suggests not an intent to deceive the Bank but rather an intent and an ability to repay consistent with Larson's ongoing business enterprises. The substantial post-Chapter 11 filing pay down of the account balances mitigates fairly strongly against the Bank's assertion that Larson, by failing to list the Bank as a creditor in the original schedules, intended to deceive. Although the Bank asserts that had it known of the Chapter 11 filing it would have terminated the cards, it is not unusual for debtors-in-possession to be granted post-petition access to credit as a means of assuring reorganization. Indeed, the Code recognizes such a possibility by granting administrative expense priority to any creditor providing the necessary means for preserving the estate. *See,* 11 U.S.C. § 503 and § 507.

■ In sum, the court does not equate a continuing use of a bank card post-Chapter 11 with an intent to defraud, particularly when the card user continues to make sub-

stantial post-petition payments against outstanding charges.

### 2.

Section 727(a)(4) relates to the fundamental necessity in bankruptcy that statements and schedules provided by a debtor be accurate and reliable. *In re Burke,* 83 B.R. 716, 720 (Bankr.D.N.D. 1988). Some courts have reasoned that the purpose of this requirement is to see that those interested in the case have provided to them accurate information upon which they can rely without having to dig out the true facts or conduct examinations. *Matter of Hussan,* 56 B.R. 288 (Bankr. E.D.Mich.1985). To be actionable under section 727(a)(4) the debtor must have knowingly made a false statement under oath with the intent to defraud his creditors regarding matters material to the administration of the estate. *In re Olson,* 916 F.2d 481 (8th Cir.1990). Under section 727(a)(5) a debtor is given the opportunity to offer explanation of any asset omissions or schedule deficiencies. In the case before the court Larson offered several explanations the first being that the estate was so cumbersome and embroiled in turmoil that he and/or his attorney simply overlooked the bank card indebtedness. The second explanation is that, as this was a Chapter 11 reorganization, he intended to keep using the cards in the manner he always had in an effort to continue on with his various business activities. The court accepts these explanations as plausible and accordingly concludes that the omission of the Mastercard bank charges from the original Chapter 11 schedules was not intentional but was merely an inadvertent mistake which was later corrected.

Accordingly, and for the reasons stated, judgment may be entered in favor of the defendant and Debtor, Raymond L. Larson, dismissing the complaint of the plaintiff, Norwest Bank Iowa, N.A.

SO ORDERED.

LET JUDGMENT BE ENTERED ACCORDINGLY.