In re Dale Glenn **WEISS** and Cathy
Marie Weiss, Debtors.

**CHASE MANHATTAN BANK, Plaintiff,**

v.

**Dale Glenn WEISS, Debtor.**

**Bankruptcy No. 91–40686–PKE.
Adv. No. 92–4003–PKE.**

United States Bankruptcy Court,
D. South Dakota.

May 1, 1992.

J. Bruce Blake, Sioux Falls, S.D., for plaintiff.

Jerry L. Pollard, Yankton, S.D., for defendant-debtor.

A. Thomas Pokela, Chapter 7 Trustee.

PEDER K. ECKER, Bankruptcy Judge.

Chase Manhattan Bank (hereinafter "Plaintiff") has brought an adversary complaint against Debtor Dale Weiss (hereinafter "Debtor") under 11 U.S.C. § 523(a)(2) to determine dischargeability of debt arising from the use of a credit card. Plaintiff is owed, as of the October 7, 1991, filing date, $5,055.66 for prepetition credit card transactions that occurred after Debtor's spouse ceased to be employed. Debtor denies making the transactions with the intent not to pay for them. On April 23, 1992, a trial was held and the Court took this matter under advisement. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2). For the reasons set below, Debtor's obligation to Plaintiff is dischargeable.

The stipulated facts and uncontradicted testimony of the case show that Debtor accepted Plaintiff's credit card solicitation and on April 5, 1991, a gold Mastercard account was issued in Debtor's name. On this date both Debtor and his spouse were employed full-time and their combined wages were used to make monthly payments. In July, 1991, Debtor and spouse had a combined *net* monthly income of $2,433. On July 27, 1991, Debtor's spouse learned unexpectedly that her horticulturist position had been eliminated. The loss of earnings reduced Debtor's household income considerably: in August, 1991, the *gross* household income was $2,142.44 and in September, 1991, it was $1,531.31.

By September, 1991, Debtor experienced difficulty meeting the ordinary and necessary living expenses, listed on Bankruptcy Schedule "J" to be $1,880.16 per month. In an effort to make the financial obligations more manageable, Debtor sought a consolidation loan but was denied. Debtor then decided to surrender his vehicles which reduced the monthly expenses by $340 per month. Debtor also tried to secure part-time employment to supplement the household income during this time period but was unsuccessful. Debtor's spouse testified that after her termination, she tried but was not successful in obtaining subsequent employment.

Debtor testified that in August, 1991, the couple took a trip to Missouri. The purpose of the trip was two-fold: first, it was a chance to see Debtor's in-laws in St. Louis, Missouri, and, second, it was an opportunity for Debtor's spouse to job search in an area where her professional services would more likely be in demand, as opposed to the rural area of South Dakota. Debtor's spouse holds a degree in forestry from the University of Missouri in Columbia, Missouri. Testimony indicates that the job market was studied in St. Louis and in the Columbia areas, including the university, but nothing was available.

Most of the $5,055.66 debt sought to be nondischargeable stems from four specific transactions that occurred between July 11, 1991, and September 5, 1991. The remaining transactions of approximately $1,500 occurred between August 30, 1991, and September 9, 1991. On September 20, 1991, Debtor sought legal advice that resulted in a Chapter 7 petition being filed October 7, 1991. The issue in this case is whether Debtor made these transactions with an intent not to pay for them and with an intent to deceive Plaintiff.

■ Plaintiff bases its claim of nondischargeability pursuant to 11 U.S.C. § 523(a)(2)(A), which provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . .

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

The clear and convincing standard historically required to prove exceptions to discharge under 11 U.S.C. § 523 has been reduced by the United States Supreme Court to a preponderance of the evidence. *Grogan v. Garner*, —— U.S. ——, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Pursuant to 11 U.S.C. § 523(a)(2)(A), the five elements to be proved in a typical fraud case are:

1. that the debtor made a representation;

2. knowing at the time it was false;

3. with the intention and purpose of deceiving the plaintiff;

4. that plaintiff relied on the representations;

5. and sustained loss and damages proximately caused as a result of the representations being made.

*In re Ophaug*, 827 F.2d 340, 342 n. 1 (8th Cir.1987); *In re Larson*, 136 B.R. 540, 543 (Bankr.D.N.D.1992); *In re Bartlett*, 128 B.R. 775 (Bankr.W.D.Mo.1991); *In re Hinman*, 120 B.R. 1018 (Bankr.D.N.D.1990); *In re Cirineo*, 110 B.R. 754 (Bankr.E.D.Pa. 1990). But credit card transactions are not typical fraud cases due to the difficulty in applying concepts of representation and reliance since the transactions are between cardholder and merchant, not between cardholder and issuing bank. It is the issuing bank, rather than the merchant, that seeks an exception to discharge. In response, courts have modified the way in which proof is established for Section 523(a)(2)(A) when credit card debt is involved. *In re Hinman*, 120 B.R. at 1021.

First, courts have held that the element of representation is implied when the cardholder uses the credit card. By using the credit card, there is an implied representation that the cardholder intends to pay the issuing bank for the transactions and that the cardholder has the ability to pay. *Id.; In re Bartlett*, 128 B.R. at 779; *In re Cirineo*, 110 B.R. at 758; *Matter of Stewart*, 91 B.R. 489, 494 (Bankr.S.D.Iowa 1988); *Comerica Bank–Midwest v. Kouloumbris*, 69 B.R. 229, 230 (D.N.D.Ill.1986); *In re Barnacle*, 44 B.R. 50, 53 (Bankr. D.Minn.1984). The rationale for fashioning the implied representation doctrine is stated as follows: "[T]he issuer should be able to step into the shoes of the supplier of goods, services or money and receive the same representations that said supplier would normally receive." *In re Vermillion*, 136 B.R. 225 (Bankr.W.D.Mo.1992). In other words, the representations made by cardholder to merchant pass through to

the issuing bank. In this case, then, there was an implied representation made by Debtor to Plaintiff that Debtor had the intent and ability to repay the transactions.

Second, implying a representation of ability to pay does not imply fraud because intent to deceive must still be shown. *Id.; In re Schmidt,* 36 B.R. 459 (D.E.D.Mo. 1983).

> What counts is whether the debtor made the representations of his ability to pay, without reasonable belief that he could repay, in order to deceive the creditor, and thereby inducing the extension of credit. The debtors' [sic] intent to repay is inconsequential in light of his intent to deceive or at a minimum his reckless disregard for his financial circumstances.
>
> . . . .
>
> If [debtor] did not have the ability to pay or reasonable expectation of ability to repay in the future, then you must look to whether he made the representation with the intent to deceive.... If the court finds that debtor knew he was unable to repay or incurred the debt with reckless disregard as to reasonable belief that he could pay, then fraud has been proven.

*In re Vermillion,* 136 B.R. at 227. In *Vermillion,* intent to deceive was shown. The debtor, a full-time student, had been unemployed for a year and had a credit card debt of $29,000 stemming from cash advances used for gambling purposes. *Id.* at 226. The debtor was financially sophisticated in that she was employed at a financial institution as a personal banker and knew how the world of credit operated. *Id.* The debtor had also been over the credit limit and failed to make any payments. *Id.* Based on these facts, the court in *Vermillion* properly concluded that this debt was nondischargeable. Other courts have made the same decision when provided with evidence that credit cards were used for the purpose of gambling and where the financial situation of the debtor was found to be "hopeless." *See In re Karelin,* 109 B.R. 943 (9th Cir. BAP 1990); *In re Bartlett,* 128 B.R. 775 (Bankr.W.D.Mo.1991). From

facts similar to these, it is not difficult to make a determination of deceit.

Usually, proving an intent to deceive is difficult, so courts have looked at a variety of objective factors and circumstances to prove this element:

1. the length of time between the charges made and petition filing;
2. whether or not an attorney was consulted about filing bankruptcy before the charges were made;
3. the number of charges made;
4. the amount of charges;
5. the financial condition of the debtor when the charges were made;
6. whether the charges exceeded the line of credit;
7. whether multiple charges were made in one day;
8. whether or not the debtor was employed;
9. the prospects for debtor's employment;
10. financial sophistication of the debtor;
11. whether there were any sudden changes in buying habits; and
12. whether luxury items or necessities were purchased.

*In re Cirineo,* 110 B.R. at 758–59; *Matter of Stewart,* 91 B.R. at 494; *In re Dougherty,* 89 B.R. 840, 841–42 (Bankr.E.D.Cal. 1988); *In re Deloian,* 60 B.R. 161, 163 (Bankr.N.D.Ill.1986); *In re Lipsey,* 41 B.R. 255, 257 (Bankr.E.D.Pa.1984). Some courts find deceit if one factor is present, others if a significant number are present, and some courts conclude that neither a predominant number of these elements nor even all of them creates a conclusive presumption of deceit. *In re Cirineo,* 110 B.R. at 759. This Court, as in *Cirineo,* agrees that a court should be free to find subjective intent to defraud from all of the surrounding circumstances. *Id.* at 762. And in making this determination, it is important to remember that there is an inherent element of risk assumed by any issuing bank, which remains until the card is revoked and the revocation is made known to the cardholder or until such time as the cardholder knows that the line of credit has been exceeded.

*First National Bank of Mobile v. Rodden-berry,* 701 F.2d 927, 928–29, 933 (11th Cir. 1983); *In re Faulk,* 69 B.R. 743, 756 (Bankr.N.D.Ind.1986); *In re Carpenter,* 53 B.R. 724, 729 (Bankr.N.D.Ga.1985).

Considering the facts and testimony of this case, along with the objective factors listed above, it is clear to this Court that Debtor's debt is dischargeable. Debtor was not reckless as to his financial condition when his spouse lost her employment. Efforts were made to adjust the monthly financial obligations and efforts were made by both the Debtor and spouse to obtain additional employment. The Court cannot conclude that Debtor's financial situation was hopeless or that Debtor knew, or should have known, that he did not realistically have the ability to meet his obligations to Plaintiff. Debtor held a reasonable expectation of an ability to repay in the future and Debtor's efforts to alleviate his financial problems help demonstrate an intention to repay. The debt was not incurred with reckless disregard as to this belief. Although some of the charges did relate to a vacation trip, one significant purpose of the trip was to look for employment in an area that would provide more opportunities for Debtor's spouse. The charges were not made for luxury items, but, rather, according to Debtor's testimony, were used for everyday necessities. Further, there was no evidence that Debtor exceeded his line of credit, and the charges were not made after Debtor obtained legal advice about filing a petition for relief under the Bankruptcy Code.

In sum, there is not sufficient evidence to find the element of deceit needed to declare this debt nondischargeable. Debtor was simply using the credit extended to him in order to meet everyday living expenses and necessities. The Court finds no subjective intent to deceive this creditor.

The provisions of the Bankruptcy Code are designed to provide honest debtors with a fresh start, free from financial pressures that exist from pre-existing debt. Therefore, complaints seeking nondischargeability under 11 U.S.C. § 523(a)(2)(A) are strictly construed against the creditor and liberally construed in favor of the debtor. *In re Kurali,* 132 B.R. 468 (Bankr. M.D.Fla.1991). Accordingly, and for the reasons stated, judgment may be entered in favor of the defendant-debtor, Dale Weiss.

Mr. Pollard shall submit an appropriate judgment.