**In re HAJI, Nahel Haji and Sahar Haji, Debtors.**

**HOUSEHOLD CREDIT SERVICES, INC., NBD Skokie, N.A., Bank One Columbus, N.A., and FCC National Bank, Plaintiffs–Appellants,**

v.

**Nahel HAJI and Sahar Haji, Defendants–Appellees.**

Nos. 96–CV–70467, 95–CV–70469, 94–CV–70470 and 94–CV–70472.

United States District Court, E.D. Michigan, Southern Division.

Sept. 23, 1996.

Richardo I. Kilpatrick, Shermeta, Chimko, Rochester Hills, MI, for Plaintiff.

Vincent R. Lorelli, Farmington Hills, MI, for Defendants.

DeMASCIO, District Judge.

This matter came before the court on plaintiffs,' Household Credit Services, Inc., N.B.D. Skokie, N.A., Bank One Columbus, N.A., and FCC National Banks' (the Banks) consolidated appeal from the bankruptcy court's December 22, 1995 order discharging debtors' debts.

Nahel Haji owned and operated a grocery business in the city of Detroit known as Sunshine Foods, earning approximately $300.00 per week. In early 1994, the store was in serious financial trouble and eventually closed in August of 1994 and filed a separate bankruptcy petition.

In 1992, NBD Bank, Bank One of Columbus and FCC National Bank all issued pre-approved credit cards to Mr. Haji. Household Credit Services issued a pre-approved card to Mr. Haji's wife, Sahar Haji. From June 17 to August 15 1994, Mr. Haji took cash advances from each of the four credit cards which he used primarily, if not exclusively for gambling at a casino in Windsor, Ontario. During this time Mr. Haji incurred over $80,000 in gambling credit card debt,

$28,300.00 of which represented the amount of gambling debt incurred on the Banks' credit cards. All of the cash advances were approved by the Banks and were in amounts up to and, in the case of the NBD credit card, exceeded his credit limit. Mr. Haji made at least one minimum payment on each of the cards, but the $28,300.00 balance was essentially unpaid at the time Mr. and Mrs. Haji filed their Chapter 7 bankruptcy proceeding in December of 1994. Mr. Haji testified at trial that he had intended to pay off his credit card debt with gambling winnings.

The issue on appeal is whether the bankruptcy court erred in discharging the debtor's credit card debts. The banks contend that the debts should be allowed pursuant to 11 U.S.C. § 523(a)(2)(A).

In *In re Ward*, 857 F.2d 1082 (6th Cir. 1988), the Sixth Circuit discussed the application of section 523 in the credit card context. As both parties acknowledge, the bankruptcy court's opinion is based entirely upon its view of the holding in *Ward*. We review the bankruptcy court's interpretation of *Ward* de novo. *In re Caldwell*, 851 F.2d 852 (6th Cir.1988).

While the court in *Ward* discussed the assumption of the risk theory as applied to credit card transactions, the bankruptcy court interpreted *Ward* as mandating application of that theory. However, we find that the Sixth Circuit did not adopt the assumption of the risk theory in *Ward*. Rather, the confined holding of *Ward* is that a credit card company must at least perform a credit check prior to issuing credit in order to be able to assert section 523 non-dischargeability, or they will be deemed to have assumed the risk of non-payment.

The record here indicates that the banks here did conduct credit checks prior to issuing credit cards to debtor. Although none of these credit checks focused on debtor's income or ability to pay, representative of the banks testified at trial that their credit checks were in accord with industry standards. Thus, it appears that the banks have complied with the narrow holding in *Ward* at the time they issued the credit cards.

It is also significant to note that the courts appear uniform in holding credit card debts incurred by gambling nondischargeable under section 523(a)(2)(A). *See In re Vermillion,* 136 B.R. 225 (Bankr.W.D.Mo.1992); *In re Davis,* 134 B.R. 990 (Bankr.M.D Fla.1991); *In re Bartlett,* 128 B.R. 775 (Bankr.W.D.Mo. 1991). *See also, In re Rembert,* Case No. 95–CV–44168 (Jan. 10, 1996), where Judge Rhodes held credit card debt from gambling nondischargeable. (Ex. A to Appellant's Brief in Support).

Because we do not interpret *Ward* to require application of the assumption of the risk theory, we must reverse the bankruptcy court's decision. On remand, the bankruptcy court is instructed to analyze whether the facts warrant a finding of non-dischargeability under section 523(a)(2)(A).

ACCORDINGLY, the decision of the bankruptcy court is REVERSED; this matter is REMANDED to the Bankruptcy Court for proceedings consistent with this opinion.