**In re Donald Francis VAN DYKE, Debtor.**

**AT & T UNIVERSAL CARD SERVICES, Plaintiff,**

v.

**Donald Francis VAN DYKE, Defendant.**

**Bankruptcy No. 96–20683.
Adv. No. 96–2035.**

United States Bankruptcy Court,
W.D. Missouri.

Feb. 24, 1997.

Kathryn A. Klein, Amy J. Ginsburg, St. Louis, MO, for Plaintiff.

Noel (Neal) Bisges, Jefferson City, MO, for Debtor.

John C. Reed, Trustee, Jefferson City, MO.

## MEMORANDUM OPINION AND ORDER

FRANK W. KOGER, Chief Judge.

Debtor, Donald Francis Van Dyke, opened a Mastercard account with a $5,000.00 credit limit with AT & T on December 30, 1995, at or about the time he became unemployed. Beginning on January 25, 1996, through the month of February 1996, Debtor brought his credit card balance from $0 to almost $2,900.00 at an exhilarating pace, primarily as a result of numerous cash advances which accounted for almost $2,600.00 of the debt incurred.

He became employed by the Department of Natural Resources on or about February 1, 1996, and had a take-home pay of approximately $1,800.00 per month. Although making a payment on his credit card of $13.00 in February and a second payment of $100.00 in March, debtor appears to have been unable to make any more payments. Nonetheless, debtor continued to use the card through March 22, 1996, solely for cash advances totaling an additional $1,950.00, exclusive of fees and interest. His account balance at that time was $4,908.68, which increased each month thereafter with the addition of interest charges, and thus exceeded his $5,000.00 credit limit in May 1996. All totaled, Debtor took seventeen (17) cash advances which, exclusive of interest, amounted to $4,500.00, and made twelve (12) purchases for $405.09. At the time debtor filed for bankruptcy, the outstanding credit card balance was $5,065.69.

■ The issue addressed in this adversary proceeding is similar to that addressed in *Household Card Services v. Vermillion (In re Vermillion)*, 136 B.R. 225 (Bankr.W.D.Mo. 1992), namely, whether the debtor's use of a credit card was accompanied by both the requisite intent to repay and the ability, or reasonable expectation of future ability, to repay the debt. In the absence thereof, a debt is nondischargeable.

■ AT & T seeks to have this debt declared nondischargeable under 11 U.S.C. § 523(a), which denies discharge of any debt:

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition. . . .

■ In order to establish nondischargeability under § 523(a)(2)(A), AT & T must prove, by a preponderance of the evidence, that Van Dyke made certain representations, at a time when he knew them to be false, that those representations were made with the purpose and intent of deceiving AT & T, that AT & T justifiably relied upon those representations, and that AT & T was damaged thereby. *In re Williamson*, 181 B.R. 403, 406 (Bankr.W.D.Mo.1995); *Field v. Mans*, —— U.S. ——, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995); *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991).

■ With respect to cases specifically involving the use of credit cards, bankruptcy courts in this district have stated the law as follows: "[F]or dischargeability purposes a consumer using a credit card is held to imply a willingness and an ability to pay for purchases." *In re Vermillion*, 136 B.R. at 226 (citing *In re Bartlett*, 128 B.R. 775 (Bankr. W.D.Mo.1991); *In re Pittman*, 41 B.R. 382 (Bankr.W.D.Mo.1984)). "Credit card charges made or cash advances received by individuals who never intended to repay the charges or advances, or by those who knew they would be unable to repay the charges, have been held to be nondischargeable under § 523(a)(2)(A)." *In re Bartlett*, 128 B.R. at 779 (citing *In re Karelin*, 109 B.R. 943 (9th Cir. BAP 1990)). If the debtor does not have the ability to repay the debt at the time it is incurred, the remaining question is whether

he knew, or should be reasonably expected to have known, that he was without such ability. *In re Vermillion,* 136 B.R. at 227. "The debtor's intent to repay is inconsequential in light of his intent to deceive or at a minimum his reckless disregard for his financial circumstances." *Id.* at 227 (citing *In re Preece,* 125 B.R. 474 (Bankr.W.D.Tex.1991) (debtor's mere intent to repay the debt insufficient in light of absence of good faith belief in ability to do so)).

 "Fraudulent intent under § 523(a)(2)(A) may be inferred from the surrounding circumstances." *In re Bartlett,* 128 B.R. 775, 779 (Bankr.W.D.Mo.1991) (citing *In re Van Horne,* 823 F.2d 1285 (8th Cir.1987)). In the present case, there is substantial evidence from which Mr. Van Dyke's intent can be inferred. It must be borne in mind, however, that "[e]ach time a 'card holder uses his credit card, he makes a representation that he intends to repay the debt....'" *In re Hashemi,* 104 F.3d 1122 (9th Cir.1996) (citing *In re Anastas,* 94 F.3d 1280 (9th Cir.1996)). As such, a determination as to the debtor's intent requires a court to bear in mind the debtor's shifting circumstances and the debtor's reasonable expectations in light thereof, and requires the court be ever mindful of the possibility that an "honest" credit card charge may, with the benefit of hindsight, appear utterly foolish at best.

Here, Van Dyke began using his credit card account on January 25, 1996, and started work for a new employer less than one week later with an expected take-home pay of $1,800.00 per month. As such, charges incurred during this first month were incurred while Debtor was clearly contemplating the existence of future income. Similarly, charges incurred through the end of the February billing cycle were incurred while debtor was enjoying his newly obtained source of income, but debtor was aware both of the large debt he was accumulating relative to his income. Debtor's account balance at the end of the billing period ending February 27, 1996, was $2,777.75. From this point forward, all of Debtor's charges were made while he was both already insolvent and lacking any reasonable belief of being able to repay his debts. With the exception of one

$13.16 charge on February 28, 1996, it appears that all additional charges were only for cash advances. Although Debtor did make a single $100 payment, this is inconsequential in light of the fact that Debtor took seven (7) additional cash advances totaling $2,050.00, exclusive of interest or withdrawal fees, during this same period. The Court finds that at the time the charges appearing on the March billing cycle (February 28, 1996 through March 27, 1996) were made, the debtor did not have the ability to repay the debt. The Court further finds that the debtor knew he was without such ability, and, as a result, intended to deceive AT & T. As such, the Court concludes the debts incurred on and after March 1, 1996 are NONDISCHARGEABLE under § 523(a)(2)(A). Plaintiff's request for attorneys fees is DENIED.

The foregoing Memorandum Opinion and Order shall constitute findings of fact and conclusions of law under Federal Bankruptcy Rule 7052 and Federal Rule of Civil Procedure 52.