In re Michael HOMSCHEK, Debtor.

SEARS, ROEBUCK & CO., Plaintiff,

v.

Michael HOMSCHEK, Defendant.

Bankruptcy No. 5–96–00841.
Adversary No. 5–96–0220A.

United States Bankruptcy Court,
M.D. Pennsylvania,
Wilkes–Barre Division.

Feb. 3, 1998.

Joseph Blazosek, West Pittston, PA.

Charles Phillips, Wyomissing, PA, for Plaintiff.

David Gniewek, Milford, PA, Trustee.

## OPINION AND ORDER[1]

JOHN J. THOMAS, Bankruptcy Judge.

In today's society purchasing power is no longer solely defined by a cash medium. The expansion of the credit card industry characterizes the practice of purchasing merchandise from retailers on store or bank issued credit cards as the socially desirable norm. Americans have been bombarded with advertising slogans to this effect, e.g. "It's everywhere you want to be"; "Don't leave home without it"; and "Discover the possibilities." In 1996, it was estimated approximately 460,-000,000 credit cards issued by more than 9,000 different card companies were circulating throughout the United States. *In re Briese,* 196 B.R. 440, 443 n. 2 (Bankr. W.D.Wis.1996) citing *House of Cards Consumer Reports* January, 1996 at 31. As a result of the intense use of credit to finance purchases, bankruptcy has become the modus vivendi among distraught debtors and overburdened consumers. In the twelve-month period ending September 30, 1997, 1,367,364 bankruptcy filings were initiated nationwide. News Release of the Administrative Office of the United States Courts dated 12/01/97. The Middle District of Pennsylvania experienced a 42% increase in filings in calendar year 1998.

The matter before the court today is a manifestation of this trend. The Debtor, Michael Homschek, executed an application for a revolving charge account with Sears, Roebuck and Co. Based upon his application, Sears issued the Debtor a credit card which allowed him to charge purchases at various Sears stores in exchange for his agreement to repay purchase prices and finance charges. Throughout the history of the account, the Debtor bought miscellaneous items on credit and subsequently paid the account in full on several occasions.

In July of 1995, the Debtor lost his job. On April 27, 1996, he filed a voluntary bankruptcy petition seeking relief from his financial obligations under Chapter 7 of the bankruptcy code. Sears instituted this adversarial complaint to prohibit the discharge

---

1. Drafted with the assistance of Susan E. Battisti, Extern Law Clerk.

of Homschek's pre-petition Sears credit card purchases. Specifically, during the time period of July 31, 1995 through September 21, 1995, the Debtor purchased the following items incurring Three Thousand Eleven and 92/100 Dollars ($3,011.92) in credit card debt.

| 07/31/95 | Drill/Saw | $211.98 |
| 07/31/95 | TV/Stereo/Home Electronics | $296.79 |
| 08/02/95 | Tools/Hardware | $679.34 |
| 08/03/95 | VCR | $180.08 |
| 08/03/95 | Tools/Hardware | $983.47 |
| 09/20/95 | Tools | $394.25 |
| 09/21/95 | Drill | $201.39 |

Plaintiff's Exhibit A.

Prior to these transactions the balance on the Debtor's account was zero.

Filing under Chapter 7 does not automatically discharge all debts incurred by a debtor, although debt will normally be discharged unless it falls within one of the enumerated exceptions to dischargeability listed in Section 523 of the bankruptcy code. 11 U.S.C. § 523. Sears seeks a determination of non-dischargeability pursuant to §§ 523(a)(2)(A) and (a)(6) averring: (1) the Debtor obtained credit, property, and services by false pretenses, a false representation or actual fraud; and that (2) Sears sustained willful and malicious injury through the Debtor's disposition of the aforementioned property in which Sears maintained a security interest.

Much has been written about the application of 11 U.S.C. § 523(a)(2)(A) to situations where the debtor has incurred obligations through the use of credit cards. I need not repeat what other judges have so articulately analyzed in supporting their various decisions. Nevertheless, while this decision will be abbreviated, I recognize that it may have some precedent in this single-judge division at least until review by a superior court or by amending legislation.

The Supreme Court case of *Field v. Mans* recognized the proposition that 11 U.S.C. § 523(a)(2)(A) can be reviewed in light of the established common law of fraud. *Field v. Mans*, 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995). In recognizing that proposition, the courts have generally looked to the enumerated elements of the common law tort cause of action in deceit in Professor Prosser's treatise on torts set forth as follows:

1. A false representation made by the defendant. In the ordinary case, this representation must be one of fact.

2. Knowledge or belief on the part of the defendant that the representation is false—or, what is regarded as equivalent, that he has not a sufficient basis of information to make it. This element often is given the technical name of "scienter."

3. An intention to induce the plaintiff to act or to refrain from action in reliance upon the misrepresentation.

4. Justifiable reliance upon the representation on the part of the plaintiff, in taking action or refraining from it.

5. Damage to the plaintiff, resulting from such reliance.

William L. Prosser, *Handbook of the Law of Torts* § 100 (3rd ed.1964).

The burden of establishing an exception to discharge lies with a creditor who must maintain that burden by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Moreover, exceptions to discharge are interpreted strictly against the creditor and in favor of the debtor. *In re Pelkowski*, 990 F.2d 737, 744 (3rd Cir.1993).

With that burden in mind, the Court calls the parties' attention to the specific elements at issue.

### 1. A False Representation.

A minority of courts that have examined this element have concluded that the false representation must be expressed. *Bank One Columbus, N.A. v. McDaniel (In re McDaniel)*, 202 B.R. 74 (Bankr.N.D.Tex. 1996), *In re Alvi*, 191 B.R. 724, 731 (Bankr. N.D.Ill.1996). Nevertheless, most courts that have applied 11 U.S.C. § 523(a)(2)(A) to credit card purchases have concluded that, because the credit card issuer is not present at the situs of the transaction, it would be unrealistic to expect the debtor to articulate a representation to the creditor at the time of its use. Many of these courts conclude that the use of the credit card equates to an "implied representation" of both the intent to pay and the ability to pay. *Bank One Co-*

*lumbus, N.A. v. McDonald (In re McDonald)*, 177 B.R. 212, 216–217 (Bankr. E.D.Pa.1994); *In re Branch*, 158 B.R. 475, 477 (Bankr.W.D.Mo.1993); *In re Preece*, 125 B.R. 474, 477 (Bankr.W.D.Tex.1991); *In re Hinman*, 120 B.R. 1018 (Bankr.D.N.D.1990).

This Court is satisfied that an express representation of a debtor's ability to pay or a debtor's intent to pay is unlikely to occur unless such language finds its way into the memorandum typically evidencing the transaction and executed by the debtor. Even if such terms were incorporated in the written documentation, it would add little to the transaction where significance is given to the process of removing one's credit card from their wallet and temporarily delivering it to the merchant as payment, in lieu of cash. I find those cases that conclude that this is not a representation to be unrealistic. as well as näive. To suggest that an individual using a credit card to obtain cash, goods or services does so without representing the intent to repay the entity financing the transaction would, surely, sanction skullduggery and require us to assume the card user is a "thief." That is not the law. Restatement (Second) of Contracts § 205 (1979) reads: "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement."

Furthermore, "the law will imply an agreement by the parties to a contract to do and perform those things that according to reason and justice they should do in order to carry out the purpose for which the contract was made and to refrain from doing anything that would destroy or injure the other party's right to receive the fruits of the contract." *Somers v. Somers*, 418 Pa.Super. 131, 613 A.2d 1211, 1214 (1992) citing *Frickert v. Deiter Bros. Fuel Co., Inc.*, 464 Pa. 596, 603, 347 A.2d 701 (1975). See also, *Livingstone v. North Belle Vernon Borough*, 91 F.3d 515, 525 & n. 11 (3d Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 1311, 137 L.Ed.2d 474 (1997).

Many courts, however, have been overbroad in the extent to which they will find a presentation of the credit card to be a representation of the debtor's *ability to repay* a debt. These courts have couched this

implied representation in such a manner as to suggest that if a creditor proves that a debtor "knew or should have known that he would be unable to repay the obligations incurred, that constitutes false pretenses, a false representation or actual fraud." *Bank One Columbus, N.A. v. McDonald (In re McDonald)*, 177 B.R. 212, 215 (Bankr. E.D.Pa.1994). With this conclusion, I disagree. To hold a debtor to such a standard would, effectively, enlarge the exceptions to discharge to cases of negligent misrepresentation. Such an extension is neither permitted nor justified. This is not to say that a negligent misrepresentation would play no role in our ultimate inquiry as to whether the debtor possessed a fraudulent intent (scienter). Comment d to § 526 of the Restatement (Second) of Torts highlights that role perfectly.

> d. The fact that the misrepresentation is one that a man of ordinary care and intelligence in the maker's situation would have recognized as false is not enough to impose liability upon the maker for a fraudulent misrepresentation under the rule stated in this Section, but it is evidence from which his lack of honest belief may be inferred. So, too, it is a matter to be taken into account in determining the credibility of the defendant if he testifies that he believed his representation to be true.

Restatement (Second) of Torts § 526 (1976)

That role will be apparent as a factor in my further analysis as to whether Homschek made a false representation when he utilized his charge card.

Moreover, the bankruptcy statute itself recognizes that a "statement respecting the debtor's financial condition" must be in writing in order to form the basis to support an exception to discharge. 11 U.S.C. § 523(a)(2)(A) and (B). Therefore, even if we assume that use of the credit card represents the debtor's representation of an ability to repay the obligation, it cannot form the basis of a cause of action under 11 U.S.C. § 523(a)(2) in the absence of a written statement to that effect by reason of its specific exclusion from consideration since false pretenses, false representation or actual fraud

can only support an exception to discharge where the false statement **does not** "respect the debtor's financial condition." 11 U.S.C. § 523(a)(2)(A). I find that a representation of an *ability* to pay does, in fact, respect the debtor's financial condition.

I conclude that the use of the credit card by a debtor is an implied representation of the debtor's intent to pay an obligation. *Anastas v. American Savings Bank (In re Anastas)*, 94 F.3d 1280 (9th Cir.1996). I further conclude that any implication of the debtor's understanding of his ability to pay the minimum payment on his credit card obligation is, at best, a factor in discovering his conscious deception, if any.[2]

While a representation of an intent to pay may be difficult to establish as false, the Courts have looked to various factors and/or badges of fraud as indicators to determine if such representation was, in fact, false. Those factors are as follows:

1.) the length of time between the charges made and the filing of the bankruptcy;

2.) whether or not an attorney has been consulted concerning the filing of bankruptcy before the charges were made;

3.) the number of charges made;

4.) the amount of the charges;

5.) the financial condition of the debtor at the time the charges were made; and

6.) whether the charges were above the credit limit of the account;

7.) whether the debtor made multiple charges on the same day;

8.) whether or not the debtor was employed;

9.) the debtor's prospects for employment;

10.) the financial sophistication of the debtor;

11.) whether there was a sudden change in the debtor's buying habits; and

12.) whether the purchases were made for luxuries or necessities.

*Bank One Columbus, N.A. v. McDonald (In re McDonald)*, 177 B.R. 212, 216 (Bankr. E.D.Pa.1994) citing other cases.

2. See, for example, factors 5, 8, 9 and 10 below.

The process of reviewing these factors in an attempt to perceive the intent of the debtor has been referred to as the "totality of the circumstances" theory. *In re Eashai*, 87 F.3d 1082 (9th Cir.1996).

### 2. Scienter.

Since the representation that is deemed critical with regard to credit card purchases is the intent to pay, by necessity scienter would be present should we find that the debtor falsely claimed to have the intent to repay an obligation.

### 3. An Intention to Induce the Creditor to Act in Reliance Upon the Misrepresentation.

While the creditor is typically not present when the credit card is used at the merchant's place of business, this Court can turn to Section 531 of the Restatement of Torts for guidance in interpreting the extent to which the debtor will be deemed to be inducing the creditor. That section reads as follows:

§ 531. General Rule

One who makes a fraudulent misrepresentation is subject to liability to the persons or class of persons whom he intends or has reason to expect to act or to refrain from action in reliance upon the misrepresentation, for pecuniary loss suffered by them through their justifiable reliance in the type of transaction in which he intends or has reason to expect their conduct to be influenced.

Restatement (Second) of Torts § 531 (1976)

In fact, this element of the common law tort of deceit would typically be incorporated into the first two elements with regard to credit card purchases. The very act of passing the credit card to the merchant is for the sole purpose of obtaining cash, goods or services on the line of credit authorized by the creditor. This transaction is not capable of any other interpretation.

#### 4. Reliance.

 *Field v. Mans,* 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995) stands for the proposition that reliance upon the misrepresentation need not be reasonable, but merely justifiable. As explained in *Field v. Mans,* "justifiability is not without some limits," if the intention not to repay the obligation would be "patent to him if he had utilized his opportunity to make a cursory examination or investigation," reliance is not justifiable. As further clarified by the Ninth Circuit, "the credit card issuer justifiably relies on a representation of intent to repay as long as the account is not in default and any initial investigations into a credit report do not raise red flags that would make reliance unjustifiable." *In re Anastas,* 94 F.3d 1280 (9th Cir.1996) *citing In re Eashai,* 87 F.3d 1082 (9th Cir.1996). Credit cannot be extended "blindly." *In re Akdogan,* 204 B.R. 90, 96 (Bankr.E.D.N.Y.1997). Reliance remains a separate element that must be established by the creditor. *In re Feld,* 203 B.R. 360 (Bankr.E.D.Pa.1996).

#### 5. Damage.

 It is obvious that it is the burden of the creditor to establish that use of the credit card resulted in damage to the creditor. Presumably, it is that element which has drawn the creditor into the debtor's bankruptcy as a scheduled creditor.

 In this action, Sears asserted the Debtor's intent to deceive is evidenced by the timing of the purchases, the amount and type of purchases, the repayment history, the Debtor's lack of ability to pay the card obligation, the inability to account at the § 341 meeting for the disposition of purchased merchandise, and Debtor's absence at this hearing on dischargeability.

The evidence before this Court reflects that the Debtor lost his job in July of 1995. In the subsequent two month period, he utilized the account on seven occasions to purchase hardline merchandise, mainly tools. The account was not burdened with any aggregate balance from prior purchases. In fact, the Debtor's payment history reflects the Debtor had purchased items and remitted payment of the full balance on various occasions. The record is void as to any allegations that the Debtor exceeded his credit limit; possessed a significant level of financial sophistication; suddenly changed his buying habits; failed to search for additional employment; or made these purchases with anticipation of filing for bankruptcy. Even the Debtor's absence in today's proceeding is not a dispositive indication of his intent to deceive. The totality of circumstances brought to my attention do not warrant a finding that Michael Homschek, the Debtor, acted with the intent to deceive Sears. Sears has failed to adequately demonstrate by a preponderance of evidence the requisite deceptive intent which is necessary to carry its burden in its § 523(a)(2)(A) claim.

Sears' additional allegation brought under § 523(a)(6) also fails. Section 523(a)(6) excepts from discharge a debt for "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6).

Sears advocates it was willfully and maliciously injured by the Debtor because the Debtor disposed of assets in which Sears possessed a security, interest, and subsequently failed to remit the proceeds from that disposition. Sears charges the Debtor acted without the knowledge or consent of Sears, in direct disregard of their security interest, and was unable to justify the disposition of this property at the § 341 meeting. It further claimed these actions are certain to cause substantial injury to Sears.

 In order to prove willful and malicious injury, Sears had to present evidence to this Court which demonstrates the Debtor acted deliberately and with substantial certainty that his actions will produce injury. *In re Conte,* 33 F.3d 303, 307–309 (3rd Cir. 1994). However, the evidence presented simply proves the Debtor disposed of the merchandise purchased on the account. The mere conveyance of property encumbered by Sears' security interest does not itself constitute malicious injury. *Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 332, 55 S.Ct. 151, 153, 79 L.Ed. 393, 396 (1934), *In re Pugliese,* 211 B.R. 173 (Bankr.M.D.Pa.1997), *In re*

*Horldt,* 86 B.R. 823, 827 (Bankr.E.D.Pa. 1988). Accordingly, this claim must fail.

This Court determines Sears was unable to meet its burden under § 523 establishing that the Debtor's conduct was either fraudulent or that the Debtor willfully and maliciously injured Sears. Therefore, it is my judgment that the debt owed to Sears in the sum of Three Thousand Eleven and 92/100 Dollars ($3,011.92) is held dischargeable.