In re Ralph SCOCOZZO, Jr., Debtor.

AT & T UNIVERSAL CARD SERVICES CORP., Plaintiff,

v.

Ralph SCOCOZZO, Jr., Defendant.

Bankruptcy No. 5–96–01646.
Adversary No. 5–96–00431A.

United States Bankruptcy Court,
M.D. Pennsylvania,
Wilkes-Barre Division.

April 17, 1998.

Valerie Rosenbluth, Doylestown, PA, for Plaintiff.

William Ruzzo, Kingston, PA, for Defendant.

### OPINION AND ORDER

JOHN J. THOMAS, Bankruptcy Judge.

Thursday and Friday, March 21 and 22, 1996, were not "lucky days" at the gaming establishments in Atlantic City, New Jersey, for Ralph Scocozzo. Five times he strode the five to ten foot distance to cash dispensing machines and inserted his AT & T credit card into the machine seeking a cash advance. Four times he was successful, borrowing Two Thousand Eighty–Five and 99/100 Dollars ($2,085.99) on each sojourn. Eight Thousand Three Hundred Forty–Three and 96/100 Dollars ($8,343.96) was obtained over a two day period on an Eight Thousand Dollar ($8,000.00) line of credit. This wasn't the first time money was borrowed to "invest" at the casinos, but in the past Scocozzo could repay the loan from winnings or other assets. It was not to be with these transactions. Unable to pay this debt, along with other unsecured obligations of about Forty Thousand Dollars ($40,000.00),

the Debtor filed for personal bankruptcy on August 2, 1996 under the provisions of chapter seven.

The discrete issue before me is whether a loan incurred to gamble is a dischargeable debt, when the winnings are the only likely source of repayment.

Several courts before me have addressed this very issue, with the majority concluding that such obligations are not dischargeable. *In re Karelin,* 109 B.R. 943 (9th Cir. BAP 1990); *In re Nahas,* 181 B.R. 930 (Bankr. S.D.Ind.1994); *In re Adent,* No. 95–A–0016, 1994 WL 594259 (Bankr.N.D.Ill. Oct. 11, 1994); *In re Pascoe,* Nos. 94–11653DAS, 94–0512DAS, 1994 WL 636496 (Bankr.E.D.Pa. Nov. 9, 1994); *In re Clagg,* 150 B.R. 697 (Bankr.C.D.Ill.1993); *Household Card Services/Visa v. Vermillion (In re Vermillion),* 136 B.R. 225 (Bankr.W.D.Mo.1992); *In re Hansbury,* 128 B.R. 320 (Bankr.D.Mass. 1991); *In re Bartlett,* 128 B.R. 775 (Bankr. W.D.Mo.1991); *In re Davis,* 134 B.R. 990 (Bankr.M.D.Fla.1991). In *In re Pressgrove,* 147 B.R. 244 (Bankr.D.Kan.1992), the debt was declared dischargeable only because the creditor could not establish a reliance on the debtor's false representation of an ability to pay.

Other courts have held such debts dischargeable. *AT&T Universal Card Services Corp. v. Totina (In re Totina),* 198 B.R. 673, 679–80 (Bankr.E.D.La.1996); *In re Alvi,* 191 B.R. 724, 734 (Bankr.N.D.Ill.1996); *In re Murphy,* 190 B.R. 327 (Bankr.N.D.Ill.1995); *In re Landen,* 95 B.R. 826 (Bankr.M.D.Fla. 1989).

These cases have generally concluded that debts incurred with the "hope" that repayment could take place with one's gambling winnings are not dischargeable. The rationale of these cases rests on the proposition that the basis for repayment is unreasonable, presumably because the odds of reaping a recovery rest entirely on luck.

From time to time, the judiciary has woven its own moral fiber into the statutory tapestry of the bankruptcy code. Nowhere is this more apparent then in the manner in which the activity of gambling has been addressed. "[I]t has been the public teaching and the

public policy of the land that gambling is immoral and to be condemned." *Modernistic Candies v. Federal Trade Commission*, 145 F.2d 454, 455 (7th Cir.1944). Historically, the role of the courts in gambling transactions has been succinctly defined. "The principle of public policy is this: *ex [d]olo malo non oritur actio*. No court will lend its aid to a man who founds his cause of action upon an immoral or illegal act." *Higgins v. McCrea*, 116 U.S. 671, 685, 6 S.Ct. 557, 564, 29 L.Ed. 764 (1886).

While I have no problem enforcing a provision that dischargeability of a debt depends on the reasonableness of a person's ability to repay that debt, I am unable to find such language in the bankruptcy code. Unfortunately, it is abundantly clear to any sitting bankruptcy judge that bankruptcies proliferate because of the unreasonableness of the debtor's financial decisions. In many cases, the debtors made decisions that, in hindsight, were foolish, reckless, and even stupid. The wise person should know that jobs, health and other fortunes, turn on a dime. No doubt there are many individuals who subscribe to a philosophy that investments in business should never extend beyond what one can afford to lose. Those same individuals might advance that debt of any kind should be avoided, since if one has to borrow then one should not be buying.

The dischargeability of gambling debts is typically analyzed under the provisions of 11 U.S.C. § 523(a)(2), which reads:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

In *Field v. Mans*, 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995), the Supreme Court observed that terminology utilized in 11 U.S.C. § 523(a)(2)(A) incorporates the "general common law of torts." *Id.*, 516 U.S. at 71 n. 9, 116 S.Ct. at 444 n. 9. Further-

more, "the most widely accepted distillation of the common law of torts [is] the Restatement (Second) of Torts (1976)." *Id.*, 516 U.S. at 70, 116 S.Ct. at 443–444. That "distillation" can be found in Section 525 of the Restatement, Liability for Fraudulent Misrepresentation, which incorporates the following elements established by the historical development of the common law in causes of action in deceit:

1. A false representation made by the defendant. In the ordinary case, this representation must be one of fact.

2. Knowledge or belief on the part of the defendant that the representation is false—or, what is regarded as equivalent, that he has not a sufficient basis of information to make it. This element often is given the technical name of "scienter."

3. An intention to induce the plaintiff to act or to refrain from action in reliance upon the misrepresentation.

4. Justifiable reliance upon the representation on the part of the plaintiff, in taking action or refraining from it.

5. Damage to the plaintiff, resulting from such reliance. William L. Prosser, *Handbook of the Law of Torts* § 100 (3rd ed.1964).

Essential to the Plaintiff prevailing on this Complaint is meeting the burden of proving by a preponderance of the evidence that the Debtor made a false representation. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

In *In re Homschek*, 216 B.R. 748 (Bankr.M.D.Pa.1998), this Court accepted the proposition that the false representation required to prevail under 11 U.S.C. § 523(a)(2)(A) could be implied when the financing vehicle was a credit card. Contrary to the view of many courts, however, I limited the application of that concept to apply only to the Debtor's *intent* to pay the charged debt, not to the debtor's *ability* to pay. Those courts that considered the use of the charge card to also be a representation of the debtor's ability to pay, did so on the premise that if a debtor "knew or should have known that he would be unable to repay

the obligations incurred, that constitutes false pretenses, a false representation or actual fraud." *Bank One Columbus, N.A. v. McDonald (In re McDonald)*, 177 B.R. 212, 215 (Bankr.E.D.Pa.1994). This was a premise to which this Court differed. "To hold a debtor to such a standard would, effectively, enlarge the exceptions to discharge to cases of negligent misrepresentation." *In re Homschek*, 216 B.R. 748, 752 (Bankr.M.D.Pa. 1998). Generally speaking, it is the very courts that have considered the use of the credit card as an implied representation of a debtor's ability to pay, that have concluded that a gambling debt, incurred with merely the hope of repaying that debt from the winnings, is nondischargeable. See, for example, *Household Card Services/Visa v. Vermillion (In re Vermillion)*, 136 B.R. 225 (Bankr.W.D.Mo.1992). This Court again utilizes the occasion to express disagreement with that proposition.

"A representation of the maker's own intention to do or not to do a particular thing is fraudulent if he does not have that intention." Restatement (Second) of Torts § 530(1) (1976).

> b. To be actionable the statement of the maker's own intention must be fraudulent, which is to say that he must in fact not have the intention stated.... If the statement is honestly made and the intention in fact exists, one who acts in justifiable reliance upon it cannot maintain an action of deceit if the maker *for any reason changes his mind and fails or refuses to carry his expressed intention into effect.*

Restatement (Second) of Torts § 530(1) cmt. b (1976) (emphasis ours).

The test may be stated as follows. If, at the time he made his promise, the debtor did not intend to perform, then he has made a false representation (false as to his intent) and the debt that arose as a result thereof is not dischargeable (if the other elements of § 523(a)(2)(A) are met). If he did so intend at the time he made his promise, but subsequently decided that he could not or would not so perform, then his initial representation was not false when made.

*Palmacci v. Umpierrez*, 121 F.3d 781, 786 (1st Cir.1997).

This is a proposition with which I agree.

■ Scocozzo's gambling created a large and needless financial obligation. Rarely, however, are the bills of debtors limited to expenditures for necessities. The fact remains that gambling has been largely legitimized and currently represents no greater lack of frugality then many other examples of contemporary lifestyle. If Congress wishes to shut the door on the dischargeability of debts of this nature, they are quite able to articulate the language to accomplish that objective. Until that time, it would be an untoward detour by judicial activism for this Court to create a provision barring the discharge of loans incurred to gamble where repayment is intended from the anticipated winnings. Such an extension of the statute would be inconsistent with the "well known guide" that "exceptions to discharge 'should be confined to those plainly expressed.'" *In re Kawaauhau*, —— U.S. ——, ——, 118 S.Ct. 974, 977, 140 L.Ed.2d 90 (1998) *citing, Gleason v. Thaw*, 236 U.S. 558, 562, 35 S.Ct. 287, 289, 59 L.Ed. 717 (1915). Since this Court must construe exceptions to discharge strictly in favor of the Debtor, *In re Fegeley*, 118 F.3d 979, 983 (3d Cir.1997), and giving the benefit of the doubt to the Debtor, as I must, *In re Omegas Group, Inc.*, 16 F.3d 1443, 1452 (6th Cir.1994), I conclude that the Plaintiff, AT & T Universal Card Services Corp., has failed to carry its burden of establishing that the Debtor obtained property through a false representation. I must, therefore, find in favor of the Debtor/Defendant.