**In re Harry J. HILLEY, Debtor.**

**Greater Pittsburgh Police Federal Credit Union, Plaintiff,**

v.

**Harry J. Hilley, Defendant.**

**Bankruptcy No. 02–29861–MBM.
Adversary No. 02–2763–MBM.**

United States Bankruptcy Court,
W.D. Pennsylvania.

Dec. 4, 2003.

---

Russell A. Burdelski, Burdelski & Cunningham, Pittsburgh, PA, for Debtor.

Carlota Bohm, Pittsburgh, PA, trustee.

### MEMORANDUM AND ORDER OF COURT

M. BRUCE MCCULLOUGH, Bankruptcy Judge.

**AND NOW,** this **4th day** of **December, 2003,** upon consideration of (a) the adversary complaint of the Greater Pittsburgh Police Federal Credit Union (hereafter "the Credit Union"), plaintiff herein, wherein the Credit Union seeks a determination by this Court that its claims in the total amount of $43,416.20 against Harry Hilley, the above-captioned debtor (hereafter "the Debtor"), are nondischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A) and (B), and (b) the other various pleadings and submissions of the parties; and in light of the Credit Union's concession, given in response to a question from the Court at the outset of the trial regarding the instant matter, that the Credit Union does not dispute, or at least no longer

disputes, the veracity of the various written representations that were made by the Debtor regarding his financial situation; and subsequent to notice and a trial on the matter held on December 3, 2003, it is **hereby ORDERED, ADJUDGED, AND DECREED** that judgment on the Credit Union's action under § 523(a)(2) shall be, and is, **ENTERED in favor of the Debtor,** and the Credit Union's claims will consequently be **DISCHARGED** via the Chapter 7 discharge which the Debtor will ultimately obtain in the instant case. The rationale for the Court's decision is set forth in some detail below.

### I.

11 U.S.C. § 523(a)(2)(A) & (B) provides, in pertinent part, as follows:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, *other than a statement respecting the debtor's or an insider's financial condition;*

(B) use of a statement *in writing*—

(i) that is materially false;

(ii) *respecting the debtor's or an insider's financial condition;*

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive.

11 U.S.C.A. § 523(a)(2)(A), (B) (West 1993) (emphasis added). In order for a debt to be excepted from discharge under § 523(a)(2)(A), a creditor must prove the following elements by a preponderance of the evidence:

(1) the debtor made ... [a] representation;

(2) [at] the time of the representation, the debtor knew it to be false;

(3) the debtor made the representation with the intent and purpose of deceiving the plaintiff;

(4) the plaintiff ... [justifiably] relied on the representation ...; and

(5) the plaintiff sustained a loss or damage as the proximate consequence of the representation having been made.

4 *Collier on Bankruptcy*, ¶ 523.08[1][d] at 523–43 to 44 (Bender 2003) (citing *Field v. Mans*, 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995), to the effect that reliance required of a creditor is justifiable rather than reasonable under § 523(a)(2)(A)) & ¶ 523.08[1][e] at 523–45 to 46 (setting forth 5–part test); *see also, e.g., In re Orndorff*, 162 B.R. 886, 888 (Bankr.N.D.Okla.1994) (same test); *In re Homschek*, 216 B.R. 748, 751 (Bankr. M.D.Pa.1998) (same test). Furthermore, the representation made by a debtor upon which a creditor predicates an action under § 523(a)(2)(A) cannot, consistent with the express language of said provision, pertain to said debtor's financial condition; representations regarding a debtor's financial condition are only actionable under § 523(a)(2)(B), and then only if the same are made in writing. *See* 11 U.S.C.A. § 523(a)(2)(A) & (B); 4 *Collier on Bankruptcy*, ¶ 523.08[1] at 523–41; *Orndorff*, 162 B.R. at 888–890; *Homschek*, 216 B.R. at 752–753. Moreover, the Court has held in at least two previous cases that

> representations by a debtor of his or her ability to repay a debt respect said debtor's financial condition, which representations, by virtue of the express language of § 523(a)(2), are neither actionable in any event under § 523(a)(2)(A) nor actionable under

§ 523(a)(2)(B) unless in writing. *See Homschek*, 216 B.R. at 752–753; *Orndorff*, 162 B.R. at 889–890 (citing ten cases); *Citibank (S.Dakota), N.A. v. Michel*, 220 B.R. 603, 605 (N.D.Ill. 1998); *Anastas*, 94 F.3d at 1285.

*In re William B. Drake*, Bankr.No. 00–20220–MBM, Adv. No. 00–2167–MBM (Bankr.W.D.Pa.2000) (J. McCullough), at 17–18.

*In re Sacco*, 270 B.R. 382, 385 (Bankr. W.D.Pa.2001).

## II.

The Credit Union, in its complaint, predicates its nondischargeability cause of action upon an allegation that the Debtor, with knowledge and intent to deceive, misrepresented to the Credit Union, *both in writing and apparently by implication as well*, that he had the ability and the intent to repay those amounts which he borrowed from the Credit Union on or about April 1, 2002, and July 18, 2002, which borrowed amounts totalled $98,136.61. Nevertheless, and as set forth at the outset of the instant opinion, the Credit Union now eschews any cause of action predicated upon a written representation by the Debtor, which plan of attack (a) the Credit Union followed at trial, and (b) is also consistent with the substance of the Credit Union's memorandum of law that was handed up to the Court at the close of trial, wherein the Credit Union confines its cause of action to one that is predicated solely upon an allegation that the Debtor *impliedly* misrepresented to the Credit Union that he had the aforesaid ability and intent to repay.

The Court, as it did orally at trial, can quickly dispose of that part of the Credit Union's cause of action predicated upon an alleged implied misrepresentation by the Debtor regarding his ability to repay. The Court must hold that the Credit Union cannot prevail with respect to any

implied representation that the Debtor may have made regarding his ability to repay because (a) a representation regarding a debtor's ability to repay, as set forth above, respects such debtor's financial condition, (b) a representation respecting a debtor's financial condition, also as set forth above, can only be actionable under § 523(a)(2)(B)—the Credit Union formally pled a cause of action under both § 523(a)(2)(A) and (a)(2)(B)—*and if made in writing,* and (c) an implied representation by the Debtor, of course, is not one that was made in writing.

■ As for the alleged implied misrepresentation by the Debtor regarding his intent to repay the Credit Union, the Court understands the Credit Union to

(a) allege, in particular, that when the Debtor borrowed money from the Credit Union both on or about April 1, 2002, and on or about July 18, 2002, he then knew that he was going to file for bankruptcy and thereby divest himself of the obligation which he was then incurring to pay the Credit Union,

(b) allege that the Debtor thus never had an intent to repay the money that he was then borrowing from the Credit Union and that he knew as much when he initially borrowed such money or, stated differently, that the Debtor, by implication, *knowingly misrepresented to the* Credit Union that he had the intent to so repay,

(c) essentially argue that the existence of such knowing implied misrepresentation by the Debtor evidences an intent to deceive the Credit Union requisite for a successful cause of action under § 523(a)(2)(A), and

(d) argue that such knowing implied misrepresentation regarding intent to repay is evidenced by the fact

that the Debtor filed for bankruptcy on September 10, 2002, which date is only roughly two to five months subsequent to the dates when the Debtor borrowed the amounts in question from the Credit Union—i.e., such timing evidences that the Debtor knew, when he borrowed from the Credit Union, that he was going to file for bankruptcy, which means, argues the Credit Union, that he also then knew that he did not have an intention of repaying the Credit Union.

Unfortunately for the Credit Union, the Court concludes that the Credit Union fails to preponderantly prove the necessary predicate to its theory as outlined above, namely that when the Debtor borrowed money from the Credit Union both on or about April 1, 2002, and on or about July 18, 2002, he then knew that he was going to file for bankruptcy. The Court concludes as it does because ample record evidence exists such that the Court is compelled to conclude, in turn, that it is at least as likely as not that the Debtor did not know when he borrowed the money in question from the Credit Union that he was going to file for bankruptcy. Such ample evidence referred to in the preceding sentence includes, *inter alia:*

(a) That the Debtor's wife resigned from her job on or about August 20, 2002, which date is subsequent to the dates upon which the Debtor borrowed the money in question. Such resignation by the Debtor's wife resulted in a substantial loss of financial resources for the Debtor's family given that, after such resignation and her subsequent location of new employment, the Debtor's wife makes roughly one-quarter of the amount that she annually used to make. The loss by the Debtor's wife

of her job, and the fact that such loss occurred more than a month after July 18, 2002, and more than four months after April 1, 2002, provides strong evidence that the Debtor lacked any need to, and thus did not possess the intent to, file for bankruptcy when he borrowed money from the Credit Union.

(b) The testimony by the Debtor, which was not disputed by the Credit Union, that he timely made all of his monthly instalment payments with respect to each of the loans that he had with the Credit Union up until the point when he filed for bankruptcy, and that he made such payments by automatic withdrawal from his checking or savings account with the Credit Union. The preceding payment practice by a debtor is not generally consistent with that of one who knowingly intends to divest himself or herself of an obligation in the near future.

(c) That the Debtor did not consult counsel regarding filing for bankruptcy until September 5, 2002. If the Debtor possessed the intent in April or July of 2002 to file for bankruptcy in September of 2002, the Court (i) would expect that the Debtor would have consulted counsel for at least some advice prior to September 5, 2002, and (ii) would nevertheless not expect that the Debtor would have waited until five days prior to when he ultimately filed for bankruptcy before he initially sought advice regarding bankruptcy.

Because the Credit Union fails to preponderantly prove that when the Debtor borrowed money from the Credit Union both on or about April 1, 2002, and on or about July 18, 2002, he then knew that he was going to file for bankruptcy, the Court has no reason to conclude, and the Credit Union accordingly fails to preponderantly prove as well, that (a) the Debtor, by implication, knowingly misrepresented to the Credit Union that he had the intent to repay the Credit Union, and (b) the Debtor thereby intended to deceive the Credit Union.

Therefore, and in light of the foregoing, the Court must conclude that the Credit Union's nondischargeability cause of action under § 523(a)(2)(A) and (B) fails.

## III.

**IN SUMMARY,** judgment on the Credit Union's action under § 523(a)(2) is entered in favor of the Debtor, and the Credit Union's claims will consequently be discharged via the Chapter 7 discharge which the Debtor will ultimately obtain in the instant case.