In re Timothy A. SCHEMPP & Donna J. Schempp, Debtors.

FIA Card Services, N.A., Plaintiff,

v.

**Donna J. Schempp, Defendant.**

**Bankruptcy No. 09–20760–MBM. Adversary No. 09–2238–MBM.**

United States Bankruptcy Court, W.D. Pennsylvania.

Dec. 17, 2009.

Lawrence G. Reinhold, Hunting Woods, MI, for FIA Card Services, N.A.

Joseph E. Fieschko, Jr., Pittsburgh, PA, for Donna J. Schempp.

## MEMORANDUM

M. BRUCE McCULLOUGH, Bankruptcy Judge.

**AND NOW,** this **17th day of December, 2009,** upon consideration of (a) the adversary complaint of FIA Card Services, N.A. (hereafter "FIA"), plaintiff herein, wherein FIA seeks a determination by the Court

that $8,569.56 of its $17,095.73 claim against Donna Schempp, one of the above-captioned debtors and defendant herein (hereafter "Mrs. Schempp"), is nondischargeable pursuant to 11 U.S.C. § 523(a)(2), and (b) Mrs. Schempp's response to FIA's complaint, as well as the parties' pretrial statements; and subsequent to notice and a trial on the matter held on November 4, 2009, it is **hereby determined that the Court shall issue an order to the effect** that (a) all of FIA's claim against Mrs. Schempp is **DISCHARGED** by virtue of Mrs. Schempp's Chapter 7 discharge, and (b) judgment in the instant adversary proceeding is consequently rendered **IN FAVOR OF Mrs. Schempp.** The rationale for the Court's decision is set forth below.

## I.

FIA's claim against Mrs. Schempp for $17,095.73 represents charges made by Mrs. Schempp upon a credit card that was issued to her by FIA (hereafter "the Credit Card"). The $8,569.56 portion of such claim that FIA seeks to have declared nondischargeable represents two cash advances that were taken out on the Credit Card by Mrs. Schempp approximately 165 days before Mrs. Schempp and her husband (hereafter referred to collectively as "the Debtors") filed for bankruptcy.

The essence of FIA's cause of action under § 523(a)(2) is that:

(a) when Mrs. Schempp took out the two cash advances in question (hereafter "the Cash Advances") on the Credit Card, she then implicitly represented, *inter alia,* that she had the present intention to repay the Cash Advances;

(d) Mrs. Schempp knew, when she implicitly represented that she had the present intent to repay the Cash Advances, that such representation was false;

(c) Mrs. Schempp made the implicit representation just described with the intent and purpose of deceiving FIA;

(d) FIA relied, at least justifiably, on the implicit representation by Mrs. Schempp just described; and

(e) FIA sustained damages as the proximate consequence of the implicit representation by Mrs. Schempp just described, to wit the loss of the funds that Mrs. Schempp obtained by means of the Cash Advances, or $8,569.56.

For numerous reasons which will be set forth below, the Court concludes that FIA cannot prevail on its nondischargeability cause of action against Mrs. Schempp under § 523(a)(2).

## II.

11 U.S.C. § 523(a)(2)(A) & (B) provides, in pertinent part, as follows:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, *other than a statement respecting the debtor's or an insider's financial condition;*

(B) use of a statement *in writing—*

(i) that is materially false;

(ii) *respecting the debtor's or an insider's financial condition;*

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive.

11 U.S.C.A. § 523(a)(2)(A) & (B) (West 2009) (emphasis added). In order for a

debt to be excepted from discharge under § 523(a)(2)(A), a creditor must prove the following elements by a preponderance of the evidence:

(1) the debtor made ... [a] representation;

(2) [at] the time of the representation, the debtor knew it to be false;

(3) the debtor made the representation with the intent and purpose of deceiving the plaintiff;

(4) the plaintiff ... [justifiably] relied on the representation ...; and

(5) the plaintiff sustained a loss or damage as the proximate consequence of the representation having been made.

4 *Collier on Bankruptcy*, ¶ 523.08[1][d] at 523–44.9 to 44.10 (Bender 2009) (citing *Field v. Mans*, 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995), to the effect that reliance required of a creditor is justifiable rather than reasonable under § 523(a)(2)(A)) & ¶ 523.08[1][e] at 523–45 to 46 (setting forth 5–part test); *see also, e.g., In re Orndorff*, 162 B.R. 886, 888 (Bankr.N.D.Okla.1994) (same test); *In re Homschek*, 216 B.R. 748, 751 (Bankr.

M.D.Pa.1998) (same test). Furthermore, the representation made by a debtor upon which a creditor predicates an action under § 523(a)(2)(A) cannot, consistent with the express language of said provision, pertain to said debtor's financial condition; representations regarding a debtor's financial condition are only actionable under § 523(a)(2)(B), and then only if the same are made in writing. *See* 11 U.S.C.A. § 523(a)(2)(A) & (B); 4 *Collier on Bankruptcy*, ¶ 523.08[1] at 523–44.7; *Orndorff*, 162 B.R. at 888–890; *Homschek*, 216 B.R. at 752–753.

■ This Court is at least somewhat persuaded by the theory, and thus will accept for purposes of the instant adversary proceeding, that a debtor makes an implicit representation regarding his or her intent to repay each time he or she uses a credit card. Therefore, the Court accepts that Mrs. Schempp represented to FIA that she had the intent to repay the Cash Advances upon receiving them. However, since Mrs. Schempp's representations regarding intent to repay neither were in writing nor concern her financial condition, said representations are not actionable under § 523(a)(2)(B).[1] Therefore,

---

1. FIA fails to argue that Mrs. Schempp implicitly represented, when she took out the Cash Advances, that she had the present ability to repay them. FIA was wise to refrain from such argument, however, given this Court's previous rulings, within the context of § 523(a)(2) litigation surrounding credit card debt, regarding implied representations as to ability to repay. In particular, this Court has held that:

this Court is precluded from holding that an implied representation by a debtor via credit card use regarding his or her ability to repay is actionable under § 523(a)(2)(A), even presupposing that the Court is persuaded that credit card use results in such an implied representation, because representations by a debtor of his or her ability to repay a debt respect said debtor's financial condition, which representations, by virtue of the express language of

§ 523(a)(2), are neither actionable in any event under § 523(a)(2)(A) nor actionable under § 523(a)(2)(B) unless in writing. *See Homschek*, 216 B.R. at 752–753; *Orndorff*, 162 B.R. at 889–890 (citing ten cases); *Citibank (S.Dakota), N.A. v. Michel*, 220 B.R. 603, 605 (N.D.Ill.1998); *Anastas*, 94 F.3d at 1285.... Therefore, ... the Court need not concern itself with any of the alleged implicit representations by ... [a debtor] regarding his ability to repay since the same were not made in writing, which fact dictates a conclusion that said alleged representations are not actionable under either § 523(a)(2)(A) or (B).

*In re William B. Drake*, Bankr.No. 00–20220–MBM, Adv. No. 00–2167–MBM (Bankr. W.D.Pa.2000) (J. McCullough), at 17–18 (quoted in *In re Hilley*, 301 B.R. 819, 822 (Bankr.W.D.Pa.2003), and *In re Sacco*, 270 B.R. 382, 385 (Bankr.W.D.Pa.2001)).

if FIA is to prevail in the instant proceeding, it can only be under § 523(a)(2)(A), which observation dictates that FIA must preponderantly prove the other requisite elements of an action under § 523(a)(2)(A), namely the falsity of, deceptive intent with respect to, justifiable reliance on, and a loss caused by, Mrs. Schempp's representations regarding intent to repay. As explained below, the Court finds that FIA cannot preponderantly establish the first two of the four preceding elements.

## III.

■ With respect to the falsity of, and deceptive intent on Mrs. Schempp's part with respect to, her representation that she intended to repay the Cash Advances, FIA offers as evidence nothing more than undisputed allegations that (a) Mrs. Schempp made but one installment payment on the outstanding balance that existed on the Credit Card before the Debtors filed for bankruptcy, (b) the Debtors filed for bankruptcy within, according to FIA, approximately 165 days of the date when Mrs. Schempp obtained the Cash Advances, (c) the Debtors had a negative net worth of approximately ($750,000)— i.e., they were substantially insolvent— when they filed for bankruptcy, and (d) the Debtors earned substantially less than they spent on a monthly basis when they filed for bankruptcy (their monthly expenses exceeded their monthly income by approximately $5,000). Given the particular evidence offered by FIA, the Court understands the gravamen of FIA's position to be that Mrs. Schempp, by obtaining the cash advances when she did, thereby engaged in a scheme to deceive FIA by accumulating debt on the eve of bankruptcy without any intent to repay the same.

Unfortunately for FIA, the Court concludes that such facts do not preponderantly prove the falsity of, or any deceptive intent on Mrs. Schempp's part with respect to, her representation that she in-

tended to repay the Cash Advances. Instead, the Court concludes, for several reasons, that it is at least equally likely (i.e., as likely as not), that Mrs. Schempp (a) did not obtain the Cash Advances as part of a scheme to deceive FIA by accumulating debt on the eve of bankruptcy without any intent to repay the same, and (b) was thus truthful when she represented to FIA that she intended to repay the Cash Advances.

First, regarding the timing of the Cash Advances and the Debtors' bankruptcy petition filing, and the fact that Mrs. Schempp made but one installment payment on the outstanding balance that existed on the Credit Card before the Debtors filed for bankruptcy, the Court concludes that the same evidences nothing more than that Mrs. Schempp was experiencing some certain financial difficulty when and after she obtained the Cash Advances, which fact prompted her to obtain them in the first place and then ultimately to file for bankruptcy protection. Such evidence, by itself, does not demonstrate that Mrs. Schempp never intended to repay the Cash Advances.

■ Second, the Debtors' financial insolvency when they filed for bankruptcy, and their presumed insolvency some 165 days earlier when Mrs. Schempp obtained the Cash Advances, does not constitute conclusive evidence that Mrs. Schempp lacked an intent to repay, and thus misrepresented to FIA her intent to repay, the Cash Advances. As well, the fact that the Debtors' monthly expenses substantially exceeded their monthly income, both at the time of their bankruptcy filing and presumably some 165 days earlier, does not conclusively prove that Mrs. Schempp lacked, and thus misrepresented, such an intent to repay. The Court so holds because, although a debtor's financial insolvency and/or other distressed financial cir-

cumstances constitutes some evidence of an intent not to repay, "a subjective rather than an objective standard must be utilized to ascertain whether a debtor has an intent to deceive (i.e., whether a debtor's representation that he or she intends to repay is false) for purposes of § 523(a)(2)(A)," *William B. Drake*, Bankr.No. 00–20220–MBM, Adv. No. 00–2167–MBM, at 18–19 (citing *In re Feld*, 203 B.R. 360, 365 (Bankr.E.D.Pa.1996); *Citibank (S.Dakota), N.A. v. Michel*, 220 B.R. 603, 606 (N.D.Ill.1998); and *In re Anastas*, 94 F.3d 1280, 1285–1286 (9th Cir.1996)). Therefore, the Court must focus in the instant matter upon whether Mrs. Schempp subjectively intended to repay the Cash Advances, not upon whether an objective person would have thought that he or she could repay said debt. With respect to such subjective intent, the Court concludes that FIA does not overcome Mrs. Schempp's testimony to the effect that (a) the Debtors' income had decreased dramatically in the roughly one-year period prior to when Mrs. Schempp obtained the Cash Advances, largely because of the decline in the real estate market, (b) she nevertheless thought that the Debtors' income would improve so as to allow her to make installment payments on the Cash Advances, (c) the Cash Advances were taken out so as to permit the Debtors to gamble, and (d) although the Debtors had gambled quite a bit in the past and had also lost money in doing so, they had always ultimately essentially broke even, thereby giving Mrs. Schempp reason to believe that the Debtors would ultimately win enough so as to allow her to repay the Cash Advances.[2]

In light of the foregoing, FIA fails to preponderantly establish, with respect to its action under § 523(a)(2)(A), the requisite elements of the falsity of, as well as any deceptive intent by Mrs. Schempp with respect to, her representation regarding intent to repay.

## IV.

**IN SUMMARY,** and in light of the foregoing analysis, (a) FIA's claim against Mrs. Schempp shall be **DISCHARGED in its entirety** by virtue of her Chapter 7 discharge, and (b) judgment in the instant adversary proceeding shall consequently be rendered **IN FAVOR OF Mrs. Schempp.**

### *ORDER OF COURT*

**AND NOW,** this **17th day** of **December, 2009,** for the reasons set forth in the accompanying Memorandum of the same date, it is hereby **ORDERED, ADJUDGED, AND DECREED** that (a) the claim of FIA Card Services, N.A., plaintiff herein, is **DISCHARGED in its entirety** by virtue of the Chapter 7 discharge of Donna Schempp, defendant herein (i.e., such claim is not excepted from such discharge), and (b) judgment in the instant adversary proceeding is consequently rendered **IN FAVOR OF Mrs. Schempp.**

.

---

**2.** That Mrs. Schempp believed that the Debtors would ultimately win enough from gambling so as to allow her to repay the Cash Advances is not *per se* unreasonable, *see Rembert v. Citibank South Dakota, N.A.*, 219 B.R. 763, 767 (E.D.Mich.1996), which means that "debts incurred from gambling do not create a nondischargeable obligation [for money obtained by fraud] *per se,*" *In re Alnajjar,* 276 B.R. 844, 850 (Bankr.N.D.Ohio 2002).