In re Laurie A. ALI, Debtor.

Joseph M. Wymard, Plaintiff,

v.

Laurie A. Ali, Defendant.

Bankruptcy No. 04–22633–MBM.
Adversary No. 04–2568–MBM.

United States Bankruptcy Court,
W.D. Pennsylvania.

March 21, 2005.

---

Joseph M. Wymard, Pittsburgh, PA.

Kenneth Steidl, Steidl & Steinberg, Pittsburgh, PA.

## MEMORANDUM AND ORDER OF COURT

M. BRUCE McCULLOUGH, Bankruptcy Judge.

AND NOW, this **21st day** of **March, 2005,** upon consideration of (a) the adversary complaint filed by Joseph Wymard (hereafter "Wymard"), wherein Wymard seeks to have his claim of $25,000 against Laurie Ali, the instant debtor and defendant herein (hereafter "the Debtor"), determined to be nondischargeable pursuant to 11 U.S.C. § 523(a)(2) and (a)(6), (b) the Debtor's answer, (c) the parties' pre-trial statements and post-trial briefs, and (d) the various exhibits introduced as evidence at trial by both parties;

and after notice and a trial on the matter held on January 10, 2005, it is **hereby ORDERED, ADJUDGED, AND DECREED** that

(a) Wymard's claim is **NOT NONDISCHARGEABLE** under § 523(a)(2) or (a)(6) and is thus **DISCHARGED** by virtue of the Chapter 7 discharge that will ultimately be received by the Debtor; and

(b) **JUDGMENT** is, accordingly, entered **in favor of the Debtor** and **against Wymard** in the instant adversary proceeding.

The rationale for the Court's decision is briefly set forth below.

At the outset, the Court notes that (a) Wymard pursued his claim for $25,000 against the Debtor pre-petition in the Pennsylvania Court of Common Pleas, Allegheny County, (b) he obtained an Arbitrators Award in such court for such amount on March 3, 2004, or two days after the Debtor filed for bankruptcy on March 1, 2004, and (c) such arbitration award appears to be attributable solely to the Debtor's failure to appear at the arbitration hearing that resulted in such award. The Court also observes that Wymard's $25,000 claim is comprised of two components, namely $7,185 for breach of contract, that is for unpaid services allegedly provided to the Debtor (such component is traceable to Count I of Wymard's state court action), and $17,815 for dam-

ages attributable to a tort action for interference with contractual relations—injurious falsehood (such component is traceable to Count II of Wymard's state court action). Wymard seeks to have (a) the $7,185 component declared nondischargeable pursuant to § 523(a)(2), and (b) the $17,815 component declared nondischargeable pursuant to § 523(a)(6). Wymard concedes, and the Court rules in any event, that (a) the Arbitrators Award as set forth above is null and void as having been obtained post-petition without relief from stay, and (b) such award consequently shall not enjoy any *res judicata* or collateral estoppel effect. The Court also holds that, because the Debtor failed to appear at the arbitration hearing that resulted in the Arbitrators Award, and since such hearing was held post-petition without the requisite stay relief, such award cannot even constitute probative, let alone persuasive, evidence in Wymard's favor as to the merits of either his $25,000 claim or such claim's nondischargeability. The basis for the Court's decision that Wymard's claim is not nondischargeable, that is that such claim shall ultimately be discharged, is set forth below.

### I.

Wymard formally argues, as set forth in his papers, that the $7,185 component of his $25,000 claim—i.e., the component attributable to unpaid services allegedly provided to the Debtor—is nondischargeable pursuant to § 523(a)(2) because such amount remains due and owing to Wymard as an indirect result of what Wymard contends were several fraudulent misrepresentations that the Debtor made to her credit card company (hereafter "MBNA"). More specifically, Wymard contends that the Debtor made knowingly false statements to MBNA about the propriety of, and so as to induce MBNA to reverse, charges made to her MBNA credit card

account by Wymard, which reversal request was ultimately granted by MBNA and then resulted in chargebacks to Wymard's account with his credit card merchant service. Wymard argues that such statements made by the Debtor to MBNA were knowingly false because, argues Wymard in turn, the Debtor knew when she made such statements that the charges that Wymard had made to her MBNA credit card account were entirely proper. As evidenced by the substance of not only paragraph 7c. of Wymard's adversary complaint but also that which he primarily argued at trial, Wymard also apparently advances another theory as to why the $7,185 component of his $25,000 claim is nondischargeable pursuant to § 523(a)(2), the essence of which theory is that (a) the Debtor, at the time when she contracted with Wymard for his provision to her of legal services, then knowingly falsely represented to Wymard that she intended to pay for such services, (b) such representation was made by the Debtor with deceptive intent, that is the intent to mislead Wymard into providing the subject legal services, and (c) Wymard actually and reasonably relied on such representation, thereby suffering resulting injury to the extent of $7,185.

The Court holds, as an initial matter, that Wymard's nondischargeability cause of action under § 523(a)(2) properly lies, that is such cause of action is maintainable, only under § 523(a)(2)(A). The Court so rules because (a) the allegedly false representations upon which Wymard predicates such cause of action deal not with the Debtor's financial condition, (b) actions under § 523(a)(2)(B) are expressly limited to those that are predicated upon statements that pertain to a debtor's financial condition, *see* 11 U.S.C.A. § 523(a)(2)(B) (West 1993), and (c) actions under § 523(a)(2)(A) are expressly limited

to those other than ones that are predicated upon statements that pertain to a debtor's financial condition, *see* 11 U.S.C.A. § 523(a)(2)(A) (West 1993). 11 U.S.C. § 523(a)(2)(A) provides, in pertinent part, as follows:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud.

11 U.S.C.A. § 523(a)(2)(A). "The party seeking to establish an exception to the discharge of a debt [under § 523(a)(2)(A) ] bears the burden of proof ... by a preponderance of the evidence." *In re Jairath*, 259 B.R. 308, 313 (Bankr.N.D.Ill.2001); *see also In re Barber*, 281 B.R. 617, 624 (Bankr.W.D.Pa.2002) (same).

■ In order for a debt to be excepted from discharge under § 523(a)(2)(A) as one for "a false representation," a creditor must prove, by a preponderance of the evidence, that:

(1) the debtor made ... [a] representation;

(2) [at] the time of the representation, the debtor knew it to be false;

(3) the debtor made the representation with the intent and purpose of deceiving the plaintiff;

(4) the plaintiff ... [justifiably] relied on the representation ...; and

(5) the plaintiff sustained a loss or damage as the proximate consequence of the representation having been made.

4 *Collier on Bankruptcy*, ¶ 523.08[1][d] at 523–44.2 (Bender 2004) (citing *Field v. Mans*, 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995), to the effect that reliance required of a creditor is justifiable rather than reasonable under

§ 523(a)(2)(A)) & ¶ 523.08[1][e] at 523–45 to 46 (setting forth 5–part test); *see also, e.g., In re Orndorff*, 162 B.R. 886, 888 (Bankr.N.D.Okla.1994) (same test); *In re Homschek*, 216 B.R. 748, 751 (Bankr. M.D.Pa.1998) (same test); *In re Bruce*, 262 B.R. 632, 636 (Bankr.W.D.Pa.2001) (same test).

■ "[A] 'false pretense' involves an implied misrepresentation or conduct which creates and fosters a false impression, as distinguished from a 'false representation' which is an express misrepresentation." *In re Haining*, 119 B.R. 460, 463–464 (Bankr.D.Del.1990); *see also Bruce*, 262 B.R. at 635–636 (same). In order for a debt to be excepted from discharge under § 523(a)(2)(A) as one for false pretenses, a creditor must, with respect to the implied representation or conduct that is asserted to constitute the false pretenses, preponderantly prove each of the elements that must be shown in order to prevail under § 523(a)(2)(A) with respect to a false representation, *see, e.g., Bruce*, 262 B.R. at 636; stated differently, a § 523(a)(2)(A) cause of action predicated upon false pretenses also requires, *inter alia*, "a showing of justifiable reliance and causation of loss," *In re Jarczyk*, 253 B.R. 140, 150 (Bankr.W.D.N.Y.2000), *rev'd on other grounds*, 268 B.R. 17 (W.D.N.Y. 2001).

Courts disagree regarding whether "actual fraud" within the meaning of § 523(a)(2)(A) means more than, or can be established other than by proving the existence of, a "false representation." *Compare Barber*, 281 B.R. at 624 (citing *In re Vitanovich*, 259 B.R. 873, 877 (6th Cir. BAP 2001), and *McClellan v. Cantrell*, 217 F.3d 890, 893 (7th Cir.2000), for the proposition that "actual fraud" "encompass[es] any means by which one person gains advantage over another and includes any surprise, trick, cunning, disassembling, or un-

fair means by which another is cheated"), *and Jairath,* 259 B.R. at 314 (citing *McClellan* for the proposition that "a deceitful trick may qualify as a fraud"), *with In re McKnew,* 270 B.R. 593, 618 n. 40 (Bankr.E.D.Va.2001) (disagreeing with *McClellan* and *Vitanovich* and "declin[ing] to expand the definition of fraud under § 523(a)(2)(A)"), *and Jarczyk,* 253 B.R. at 145 n. 4 (disagreeing with *McClellan*). However, even for those courts that hold that "[a]ctual fraud is a broader concept than fraudulent misrepresentation ...[, that is that] actual fraud encompasses fraud that is not based on any representation," *Barber,* 281 B.R. at 624, such courts nevertheless hold as well that actual fraud cannot be found to have existed unless "the debtor was [also] guilty of intent to defraud." *Jairath,* 259 B.R. at 314.

Applying the foregoing law to both of Wymard's theories for relief under § 523(a)(2)(A) vis-a-vis the $7,185 component of his $25,000 claim, the Court must reject such theories for at least several reasons.

■ First, if Wymard's hallmark theory for relief under § 523(a)(2)(A), that is that the $7,185 claim component is nondischargeable on the ground that the Debtor made several fraudulent misrepresentations to MBNA, can have any vitality, it can only have such (a) under the "actual fraud" prong of § 523(a)(2)(A), and (b) if "actual fraud" within the meaning of § 523(a)(2)(A) can be established other than by proving the existence of a "false representation." The Court so rules because (a) the "false representation" and "false pretenses" prongs of § 523(a)(2)(A), as set forth above, require a showing of justifiable reliance on a creditor's part, (b) Wymard must concede, and the Court finds in any event, that the representations that were indisputably made by the Debtor to MBNA were never made to Wymard,

and (c) Wymard thus could not have even actually, let alone justifiably, relied on such representations.

■ Second, such theory by Wymard—that is, that the $7,185 claim component is nondischargeable on the ground that the Debtor made several fraudulent misrepresentations to MBNA—cannot succeed under the "actual fraud" prong of § 523(a)(2)(A), presuming *arguendo* that such prong can be satisfied other than by proving the existence of a false representation, because (a) "actual fraud," as set forth above, requires a showing that the debtor was guilty of intent to defraud, (b) Wymard fails to preponderantly prove, accepting *arguendo* that the charges made by Wymard to the Debtor's MBNA credit card account were proper, that the Debtor knew when she represented to MBNA that such charges were improper that they were instead proper, and (c) Wymard thus fails to preponderantly prove that the Debtor intended to defraud him when she complained to MBNA regarding the charges that Wymard had made to her MBNA credit card account. The Court holds that Wymard fails to preponderantly prove that the Debtor knew when she represented to MBNA that such charges were improper that they were instead proper because the Court finds that it is at least as likely as not that the Debtor, when she complained to MBNA about Wymard's charges to her credit card account, believed that such complaints were true, that is that such charges were improper and, thus, subject to reversal. Such holding by the Court is particularly compelled given that Wymard concedes that (a) he contracted with the Debtor to provide his own legal services to her, (b) someone else in his office nevertheless stood in for him on every, or nearly every, occasion respecting the legal representation ultimately afforded to the Debtor, and (c) a substantial

portion of the reversed charges—or charged back amounts—pertained to services that were ultimately never performed for the Debtor by anyone in Wymard's office.

Third, the Court can accept that the Debtor, when she contracted with Wymard for his provision to her of legal services, then represented to Wymard, either implicitly or explicitly, that she intended to pay for such services. Furthermore, and as a matter of law, "[a] misrepresentation by a debtor of his or her intention to perform contractual duties ... may be a false representation under section 523(a)(2)(A) ... if the debtor had no intention of performing any of the obligations under the contract." 4 *Collier on Bankruptcy*, ¶ 523.08[1][d] at 523–44.2 to 523–44.3. However, and unfortunately for Wymard, the Court holds that Wymard fails to preponderantly prove that the Debtor, when she contracted with Wymard and when his firm provided services to her, then intended not to pay for such services. Put differently, the Court holds that Wymard fails to preponderantly prove the falsity of the Debtor's implicit or explicit representation that she intended to pay him for services that he might render to her. The Court so holds because the Court finds that it is at least as likely as not that (a) the Debtor, both at the outset of the parties' contract and prior to the provision of services by Wymard's firm to her, fully intended to pay Wymard for such services to be rendered, and (b) the Debtor formulated an intent not to pay Wymard the $7,185 asserted by him to still be due and owing from her only at some point after Wymard's firm had provided such services—such subsequently-formulated intent not to pay, even if not excusable (which issue is open to debate in the instant matter), is, of course, not actionable under

§ 523(a)(2)(A), *see* 4 *Collier on Bankruptcy*, ¶ 523.08[1][d] at 523–44.2 ("The failure to perform a mere promise is not sufficient to make a debt nondischargeable, even if there is no excuse for the subsequent breach"). Because Wymard fails to preponderantly prove the falsity of the Debtor's implicit or explicit representation that she intended to pay him for services that he might render to her, Wymard likewise fails, and necessarily so, to preponderantly establish either knowledge on the Debtor's part as to the falsity of such representation, or that the Debtor possessed deceptive intent when she made such representation. Consequently, Wymard cannot prevail on his alternative theory under § 523(a)(2)(A)—i.e., that the $7,185 claim component is nondischargeable because the Debtor knowingly falsely represented to Wymard that she intended to pay for services that were provided to her.

In light of the foregoing, Wymard's $7,185 claim component cannot be declared nondischargeable under § 523(a)(2).

## II.

Wymard contends that the $17,815 component of his $25,000 claim—i.e., the component attributable to Wymard's state court tort cause of action for interference with contractual relations/injurious falsehood—is nondischargeable under § 523(a)(6) as a claim for willful and malicious injury suffered by Wymard at the hands of the Debtor. With respect to Wymard's cause of action for interference with contractual relations/injurious falsehood, what the Court understands Wymard to contend is that the Debtor, by making several alleged fraudulent misrepresentations to MBNA regarding the propriety of charges that Wymard made to her MBNA credit card account, thereby tortiously interfered with Wymard's con-

tractual relations with third parties. Wymard now alleges, in particular, that such misrepresentations by the Debtor caused

    (a) Wymard's credit card merchant service (hereafter "NPC") to terminate its contract with Wymard,

    (b) NPC to place Wymard on a list entitled "Terminated Merchant File—Member Alert To Control High Risk Merchants" (hereafter "TMF—MATCH"),

    (c) another credit card merchant service that Wymard utilized subsequent to the termination of his contract with NPC (hereafter "PNC") to also terminate their contract with Wymard,

    (d) Wymard to essentially be permanently barred from utilizing merchant processing anywhere, thereby precluding him from utilizing credit card services in connection with his business in the future and perhaps resulting in a loss of future clientele, and

    (e) Wymard's individual credit report to be tarnished (as a result of the TMF—MATCH listing being published on such credit report).

In order for such state court tort cause of action to be nondischargeable under § 523(a)(6), what Wymard must then necessarily contend is that the Debtor willfully and maliciously interfered with Wymard's contractual relations with NPC, PNC, and perhaps other third parties.

    As this Court has held before, [a] nondischargeable debt under § 523(a)(6) is one that was incurred by the debtor as a result of "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C.A. § 523(a)(6) (West 1993). "The word 'willful' in [§ 523](a)(6) modifies the word 'injury,' indicating that nondischargeability [under § 523(a)(6) ] takes a deliberate or intentional *injury,* not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau v. Geiger,* 523 U.S. 57, 118 S.Ct. 974, 977, 140 L.Ed.2d 90 (1998). An injury is deliberate or intentional "if the actor purposefully inflicted the injury or acted with [knowledge that there was] substantial certainty that injury would result." *In re Conte,* 33 F.3d 303, 305 & 307–09 (3rd Cir.1994); *Geiger v. Kawaauhau (In re Geiger),* 113 F.3d 848, 852–54 (8th Cir.1997), *aff'd,* 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998); *In re Slosberg,* 225 B.R. 9, 18–19 (Bankr.D.Me.1998) (citing, at n. 12, *State of Texas v. Walker,* 142 F.3d 813, 823–24 (5th Cir.1998); *In re Kidd,* 219 B.R. 278, 285 (Bankr.D.Mont.1998); *In re Dziuk,* 218 B.R. 485, 487 (Bankr.D.Minn.1998)); *In re Grover Hughes Phillippi,* Bankr. No. 98–21819–MBM, Adv.No. 98–2256–MBM (Bankr.W.D.Pa.7/20/99), at 7–11 & n. 4. "An injury to an entity or property may be a malicious injury within . . . [§ 523(a)(6)] if it[—or more accurately, the tortious act of a debtor which resulted in said injury—]was wrongful and without just cause or excuse, even in the absence of personal hatred, spite or ill-will." 4 *Collier on Bankruptcy* ¶ 523.12[1] at 523–91; *see also In re Braen,* 900 F.2d 621, 626 n. 4 (3rd Cir. 1990) (using the same quotation from *Collier* in defining "malicious injury"); *Phillippi,* Bankr.No. 98–21819–MBM, Adv.No. 98–2256–MBM, at 6 (same); *Slosberg,* 225 B.R. at 21–22 ("A showing of malice requires a showing that the debtor's willful, injurious conduct was undertaken without just cause or excuse").

*In re Slomnicki,* 243 B.R. 644, 649 (Bankr. W.D.Pa.2000) (also holding that the Third Circuit's holding in *Conte* that an injury is deliberate or intentional if an actor acts with knowledge that there is substantial

certainty that injury will result remains good law notwithstanding that it was decided prior to the U.S. Supreme Court's decision in *Kawaauhau*).

Applying the foregoing law to Wymard's $17,815 claim component as described above, the Court holds, as an initial matter, that Wymard fails to preponderantly prove that the Debtor acted with malice when she complained to MBNA regarding the propriety of charges that Wymard had made to her credit card account. The Court so holds because (a) Wymard, as set forth in the preceding section herein, fails to preponderantly prove that the Debtor knew when she so complained that her complaints regarding Wymard were false, and (b) Wymard thus fails to preponderantly prove that such complaints by the Debtor were wrongful and without just cause or excuse.

Much more problematical for Wymard, however, is the willfulness prong of § 523(a)(6). The Court so holds because the record evidence, far from preponderantly establishing that the Debtor intended to interfere with Wymard's contractual relations with NPC, PNC, and perhaps others, instead overwhelmingly establishes that the Debtor did not intend to so interfere. The Court must hold as it does because the Court, in turn, affirmatively finds that all that the Debtor cared about when she complained to MBNA about the charges that Wymard had made to her credit card account was that such charges be reversed. Put differently, the Court (a) is convinced that the Debtor could not have cared less when she so complained— indeed, the Court must ask why the Debtor would then have cared—that such complaints might ultimately operate to hinder Wymard's contractual relations with third parties such as NPC and PNC, and (b) must thus hold that the Debtor did not thereby act with the intent to hinder, destroy, or in any way interfere with Wymard's contractual relations with third parties. The Court also holds, and quite comfortably, that it is far from substantially certain that the complaints that the Debtor registered with MBNA regarding charges that Wymard made to her credit card account would ultimately result in interference to, or with, Wymard's contractual relations with third parties. The Court so holds because it is not even substantially certain, in general, that a credit cardholder would succeed in having charges to his or her credit card account reversed were such cardholder to complain to his or her credit card company, let alone that, in the event that such charges were reversed, various indignities—i.e., termination of merchant service contracts, placement upon an "alert" list, and tarnishing of credit standing—would then be visited upon the merchant who initially placed such charges on such cardholder's credit card account. Because interference with Wymard's third party contractual relations would not follow with substantial certainty from the complaints that the Debtor registered with MBNA, the Debtor, of course, could not have had knowledge that there was substantial certainty that such interference would so result; accordingly, it cannot thereby be preponderantly demonstrated that the Debtor intended to interfere with Wymard's third party contractual relations by virtue of her having registered complaints with MBNA.

In light of the foregoing, Wymard's $17,815 claim component cannot be declared nondischargeable under § 523(a)(6).

### III.

**IN SUMMARY,** (a) Wymard's claim is **NOT NONDISCHARGEABLE** under § 523(a)(2) or (a)(6) and is thus **DISCHARGED** by virtue of the Chapter 7 discharge that will ultimately be received

by the Debtor; and (b) **JUDGMENT** is, accordingly, entered **in favor of the Debtor** and **against Wymard** in the instant adversary proceeding.